IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| STEPHEN A. SANTORO,<br><br>Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC<br>and KITSAP PROPERTY<br>PRESERVATION, LLC,<br><br>Defendants. | 6:14-cv-00522-TC<br>6:15-cv-00399-TC<br><br>**OPINION AND ORDER** |

AIKEN, District Judge:

In this consolidated diversity action, plaintiff Stephen A. Santoro ("Santoro" or "plaintiff") asserts eight state law claims arising from the events leading up to and including the foreclosure of his home. In February 2015, I dismissed three of those claims: (1) trespass, (2) intrusion upon seclusion, and (3) wrongful foreclosure. Plaintiff now moves for reconsideration of the dismissal of his wrongful foreclosure claim. For the reasons set forth below, plaintiff's motion for reconsideration is denied.

## BACKGROUND

This case arises from the judicial foreclosure of a Promissory Note ("the Note") and Deed of Trust, which secured a loan Santoro took out to purchase residential property in Bandon, Oregon. Santoro originally executed the Note and Deed of Trust on August 19, 2009. The original lender was Stearns Lending, Inc. On January 24, 2013, GMAC Mortgage, LLC, successor to Stearns Lending, Inc., filed a complaint to foreclose the Deed of Trust in the Circuit Court of Oregon, Fifteenth Judicial District ("Coos County Circuit Court"). Two months later, OCWEN filed a first amended complaint to foreclose the Deed of Trust.

OCWEN filed a motion for summary judgment about a year later, on February 26, 2014. Opposing the motion, Santoro questioned OCWEN's right to foreclose, arguing that neither GMAC nor OCWEN held the Note on the date the foreclosure action was filed. The court allowed the parties to submit additional evidence addressing that question. On September 2, 2014, OCWEN filed a supplemental declaration, in which an OCWEN employee attested that GMAC was indeed the holder of the Note on January 24, 2013, the date the foreclosure complaint was filed, and that the Note remained, as of September 2, 2014, in the possession of OCWEN. The Coos County Circuit Court granted OCWEN's motion for summary judgment, specifically finding that OCWEN was the entity entitled to enforce the Note, and subsequently entered a General Judgment of Foreclosure.

On October 22, 2014, Santoro filed a motion to set aside the judgment. In that motion, Santoro asserted that there was "newly discovered evidence" which created an issue of fact as to whether OCWEN or GMAC was the holder of the Note at the time the foreclosure action was filed. Santoro pointed to an Assignment of Deed Trust ("assignment") recorded on August 8, 2014 in Coos County, Oregon as the newly discovered evidence. Through the assignment,

Stearns Lending transferred "all its rights, title and interest in" the mortgage to Santoro's Bandon property to OCWEN. Although it was recorded on August 8, 2014, the assignment stated that the transfer had actually taken place on December 17, 2013—after the foreclosure complaint was filed but before OCWEN filed its motion for summary judgment. Santoro stated that he did not discover the assignment until after the court had entered a General Judgment of Foreclosure. Santoro asserted that because the assignment showed that neither OCWEN nor GMAC held the Note at the time the foreclosure action was filed, OCWEN lacked standing to foreclose.

On December 3, 2014, the court denied Santoro's motion to set aside the judgment. The court held that the assignment was not newly discovered evidence because it was a matter of public record during the period in which the court was receiving supplemental evidence regarding who held the Note. Second, the court held that under Oregon law, the existence of the assignment did not establish possession of the Note because a deed of trust is an incident of the debt. For these reasons, the court denied Santoro's motion.

On March 31, 2014—shortly after OCWEN filed its motion for summary judgment in the state court case—Santoro filed this action, asserting seven state law claims against OCWEN and other defendants. Santoro subsequently filed a first amended complaint on August 20, 2014 and a second amended complaint on December 15, 2014. In the second amended complaint, filed about two weeks after the state court denied Santoro's motion to set aside the foreclosure judgment, Santoro added an eighth claim: wrongful foreclosure.[1] On February 4, 2015, OCWEN filed a motion to dismiss three of the eight claims in this case: (1) trespass, (2) intrusion upon seclusion, and (3) wrongful foreclosure. Magistrate Judge Coffin issued Findings and Recommendation ("F&R") that recommended the motion to dismiss the three claims be granted.

---

[1] Santoro also file a related action in this Court on March 10, 2015. The two cases were consolidated on February 13, 2017.

Regarding plaintiff's claim for wrongful foreclosure, Judge Coffin stated that the claim was "an attack on a final state court judgment" and that was "inextricably intertwined with the prior state court judgment," depriving this Court of "jurisdiction to hear [it]." *Santoro v. OCWEN Loan Servicing, LLC*, 2015 WL 4920836, =*2 (D. Or. June 15, 2015).

Plaintiff objected and I reviewed *de novo*. On August 14, 2015, I modified the F&R to reflect a stipulated factual discrepancy, otherwise adopted the F&R, and dismissed plaintiff's trespass, intrusion upon seclusion, and wrongful disclosure claims. Plaintiff now, after more than two years, moves for reconsideration of the order dismissing plaintiff's wrongful foreclosure claim. The basis for Santoro's argument is his contention that (a) OCWEN lacked standing to bring foreclosure and (b) OCWEN fraudulently manufactured evidence to make the state court believe it had the authority to foreclose.

## STANDARD OF REVIEW

A district court has the inherent procedural power to reconsider, rescind, or modify an interlocutory order. *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001); *see also Smith v. Massachusetts*, 543 U.S. 462, 475 (2005) (Ginsburg, J., dissenting). This power derives from the common law, as explained by the Third Circuit in *United States v. Jerry*:

> If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute. Nothing in the Rules limits the power of the court to correct mistakes made in its handling of a case so long as the court's jurisdiction continues, i.e., until the entry of judgment. In short, the power to grant relief from erroneous interlocutory orders, exercised in justice and good conscience, has long been recognized as within the plenary power of courts until entry of final judgment and is not inconsistent with any of the Rules.

487 F.2d 600, 604 (3d Cir. 1973) (internal quotation marks omitted).

While the Federal Rules of Civil Procedure do not expressly authorize the district courts to hear a motion for reconsideration of an interlocutory order, Rule 54(b) implicitly supports the district courts' inherent power to reconsider and modify their interlocutory judgments. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–16 (4th Cir. 2003). The pertinent part of Rule 54(b) provides that any order or other decision that adjudicates fewer than all of a parties' claims "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liability." Fed. R. Civ. P. 54(b).

The Ninth Circuit has held that, unless highly unusual circumstances exist, a motion for reconsideration under Federal Rule of Civil Procedure 59(e) should be granted only if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error, or (3) there is an intervening change in the controlling law. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Although Rule 59(e) applies to motions for reconsideration of orders of final judgment and thus is inapplicable here, the same standard governs motions for reconsideration of interlocutory orders. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). "A motion for reconsideration may *not* be used to raise arguments or present evidence for the first time when they reasonably could have been raised earlier in the litigation." *Id.* (internal quotation marks omitted) (emphasis in original).

## DISCUSSION

Federal court jurisdiction to review state court judgments is vested exclusively in the United States Supreme Court. 28 U.S.C. § 1257(a). Therefore, federal district courts lack subject matter jurisdiction to review final state court judgments. This prohibition against reviewing state court judgments bars federal courts from adjudicating issues that are

"inextricably intertwined" with those adjudicated by the state court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). The Ninth Circuit has found that claims asserted in federal and state court are inextricably intertwined "where the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir. 2012) (internal quotation marks omitted). This rule is known as the *Rooker-Feldman* doctrine. *Id.*; *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 (1983).

*Rooker-Feldman* does not bar federal suit to set aside a state court judgment if that judgment was obtained by extrinsic fraud. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004).

> Extrinsic fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud. *Rooker–Feldman* therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud.

*Id.* *Rooker-Feldman* comes back into play, however, where the parties in the state proceeding raised the issue of the alleged extrinsic fraud and the state court subsequently found there was no fraud. *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 860 (9th Cir. 2008).

Here, plaintiff asserts that the extrinsic fraud exception to the *Rooker-Feldman* doctrine applies. Plaintiff argued that the assignment recorded August 8, 2014, was fraudulent, and that it was used to mislead the state court into believing that OCWEN had authority to foreclose the Deed of Trust. He supports this argument with two emails. The first email, dated May 17, 2013, is from Freddie Mac. It states that Freddie Mac purchased the mortgage on the Bandon property in October 2009. The second email, dated November 5, 2014, is from Stearns Lending. It states that Stearns Lending relinquished all interest in the Note and Deed of Trust in September 2009

and that Stearns Lending had no knowledge of the assignment recorded August 8, 2014. Santoro asserts that the August 8 is a fraud that "prevented Santoro from receiving vital evidence" in its state court case. Pl's. Mot. Reconsideration 5 (doc. 97).

Santoro's arguments do not fall under the extrinsic fraud exception to *Rooker-Feldman* because this issue of the alleged extrinsic fraud—the false assignment—has previously been raised and adjudicated in state court. Granting the motion for reconsideration would necessarily and effectively revisit and overturn the state court's ruling. In his motion, Santoro asserts that there is a question of material fact regarding whether the assignment was fraudulent. But permitting the claim for wrongful foreclosure to proceed here based on a finding of fraud would necessarily invalidate the judicial foreclosure and overturn the state court's decision in two respects. First, in making that finding, I would overturn the state court's holding that the assignment was not newly discovered evidence because it could have been discovered with due diligence before the entry of the foreclosure judgment. Second, in making that finding I would overturn the state court's holding that, under Oregon law for judicial foreclosure, the existence of the assignment did not establish possession of the Note.

While it is true that *Rooker-Feldman* does not bar federal suit to set aside a state court judgment if that judgment was obtained by extrinsic fraud, *Rooker-Feldman* does apply where the parties in the state proceeding raised the issue that forms the basis of the alleged extrinsic fraud. In the state court proceeding, Santoro argued that neither OCWEN nor GMAC held the note at the time the foreclosure action was filed. He cited the August 8, 2014 assignment as the basis for his newly discovered evidence argument. Santoro now uses that same assignment as the basis for his extrinsic fraud exception. Santoro does not appear to have argued that the assignment was "fraudulent" before the state court. But *Rooker-Feldman* nonetheless applies

because the state court already concluded that (1) the assignment was a matter of public record before the entry of the foreclosure judgment and thus was not newly discovered evidence that could support setting aside the judgment and (2) even if the assignment had been newly discovered evidence, it could not invalidate OCWEN's standing to foreclosure because assignment of the Note is not required to permit judicial foreclosure. In order to grant plaintiff's motion, I would have to override the state court's decision regarding newly discovered evidence and conclude that the assignment, if fraudulent, has the potential to invalidate the foreclosure judgment. This Court is barred from adjudicating whether the assignment was fraudulent because that issue is "inextricably intertwined" with issues previously adjudicated by the state court.

Further, in analyzing this motion for reconsideration, I considered the fact that Santoro filed this motion on October 5, 2017, over two years after this Court entered the Order adopting Judge Coffin's F&R and dismissing the wrongful disclosure claim on August 14, 2015.[2] Importantly, the newest evidence plaintiff cites in support of his motion is the email from Stearns Lending, which is dated November 5, 2014. Plaintiff's argument is based entirely on evidence he possessed not only before I denied the motion to dismiss, but before OCWEN even filed that motion. Plaintiff does not explain why he waited two years to file a motion for reconsideration. Although not dispositive, Santoro's delay in making this motion weighs heavily against revising the prior order.

---

[2] Some federal district courts have local rules that impose time limits on bringing such motions for reconsideration as Santoro has brought. *See* S.D. Cal. Local Rule 7.1(i)(2) ("[A]ny motion or application for reconsideration must be filed within twenty-eight (28) days after the entry of the ruling, order or judgment sought to be reconsidered."). This Court does not have such a rule, nevertheless, Santoro's timeliness, or lack thereof, is a consideration in analyzing this motion.

## CONCLUSION

I find no error in my decision to grant OCWEN's motion to dismiss plaintiff's wrongful foreclosure claim. Plaintiff's federal court claim was inextricably intertwined with issues adjudicated in the state court foreclosure action and the issue regarding the alleged extrinsic fraud cannot be revisited without effectively reviewing the decision of state court. Plaintiff's motion for reconsideration (doc. 97) is DENIED.

IT IS SO ORDERED.

Dated this 14th day of December 2017.

*Ann Aiken*
Ann Aiken
United States District Judge