IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STEPHEN A. SANTORO,<br><br>            Plaintiff,<br>    v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>            Defendant. | Case No.: 6:14-cv-00522-AN (lead)<br>         6:15-cv-00399-AN<br>         (consolidated)<br><br>OPINION AND ORDER |

*Pro se* plaintiff Stephen A. Santoro initially filed this case on March 31, 2014, but his claims have varied throughout the life of this case due to a myriad of factors. At this time, plaintiff maintains the following claims against defendant Ocwen Loan Servicing, LLC ("Ocwen"): (1) trespass, (2) intrusion upon seclusion, and (3) violations of the Oregon Unlawful Trade Practices Act ("UTPA"). On January 5, 2023, Ocwen filed a Motion for Summary Judgment, seeking dismissal of the three remaining claims. Oral argument was heard on July 28, 2023, and supplemental briefing was ordered. The supplemental briefing was completed on August 18, 2023. For the foregoing reasons, defendant Ocwen's motion is GRANTED in part, and DENIED in part.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.*; *see In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324.

## BACKGROUND

**A.      Factual History**

On August 19, 2009, plaintiff took out a mortgage for a residence located at 445 SW Lincoln in Bandon, Oregon (the "Property"). 3d Amended Compl., ECF [76], at ¶ 13. As part of the mortgage, plaintiff signed a note and deed of trust. *Id.* The deed of trust states:

> "If . . . (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property."

Decl. of Thomas N. Abbot, ECF [268], Ex. 4, at 7. "Securing the Property" is described in the deed of trust as:

> "entering the property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off."

*Id.* at 8. Plaintiff subsequently defaulted on the mortgage in July 2011. *Id.* Ex. 1, at 21:12-15. GMAC Mortgage, LLC initiated a foreclosure action in Coos County Circuit Court on January 22, 2013. 3d Amended Compl. ¶ 7. Approximately two months later, Ocwen filed an amended complaint in the foreclosure action. *Id.* While the foreclosure action was pending, Ocwen received notice on February 17,

2014, from one of its independent contractors, Altisource Solutions, Inc, ("Altisource") that the Property was vacant. Decl. of Courtney R. Peck ("Peck Decl."), ECF [93], Ex. E, at 8. On February 19, 2014, records in Ocwen's servicing system, REALServicing, indicate that a "15 Day Vacancy Letter" was sent. *Id.* at 9. The letter was intended "to elicit a response from [plaintiff] regarding whether he abandoned the Property." Def. Ocwen's 2d Mot. for Summ. J. ("Def.'s 2d Mot."), ECF [267], at 13. Plaintiff asserts that he never received this letter. 2d Decl. of Stephen A. Santoro, ECF [86], ¶ 14. Ocwen does not possess an image copy of the letter in its systems. Def.'s 2d Mot. 13.

On March 5, 2014, Ocwen issued work orders for property preservation. Peck Decl., Ex. E, at 13-14. On March 6, 2014, Ocwen issued a request for a second property inspection report. *Id.* at 14. On March 10, 2014, Altisource carried out the property preservation procedures, described above in the definition of "Securing the Property," through its own independent contractor, Kitsap Property Preservation, LLC ("Kitsap"). 3d Amended Compl. ¶¶ 9-10; Peck Decl., Ex. G, ¶ 6. Kitsap's independent contractor, Carl Faris ("Faris"), submitted a sworn declaration in the Coos County foreclosure action attesting that he completed the preservation activities because the doors were all unlocked, one was ajar, and the interior was disorganized, leading him to believe that the Property was vacant. 3d Amended Compl. ¶¶ 6, 8-9. Ocwen received confirmation that the property preservation procedures were completed on March 11, 2014. Peck Decl., Ex. E, at 18. On March 14, 2014, Ocwen received the second inspection report which indicated that the Property was "vacant." *Id.* at 19.

Plaintiff contends that the Property was, in fact, not abandoned and that he returned to the Property after work that day to find that the locks had been changed and he could not enter the Property through the doors. 3d Amended Compl. ¶ 9. After investigating the home, plaintiff alleges that his personal effects were disturbed, including his personal computer, and that numerous personal property items were missing from the Property. *Id.* ¶ 12. Plaintiff filed a police report and temporarily obtained accommodations elsewhere; however, plaintiff still presently lives at the Property. *Id.* ¶ 11.

**B.    Procedural History**

Given that this case has been, in a word, eventful since its inception in 2014, the following

3

procedural background is provided. Not all of the filings and decisions rendered in this case are included, but those pertaining to present the motion are discussed.

On March 31, 2014, plaintiff initiated his first lawsuit, case no. 6:14-cv-00522, against Ocwen and Altisource.[1] On August 20, 2014, plaintiff filed a First Amended Complaint adding Kitsap as a defendant. On December 15, 2023, plaintiff filed a Second Amended Complaint adding one additional claim. The Second Amended Complaint alleged the following claims against Ocwen, Altisource, and Kitsap: (1) trespass; (2) conversion; (3) violation of the UTPA; (4) negligence; (5) negligent hiring, training, and/or supervision; and (6) invasion of privacy, intrusion upon seclusion, and access and removal of confidential information and records. 2d Amended Compl., ECF [24], at ¶¶ 15-48. It also alleged two claims solely against Ocwen: (1) intentional infliction of emotional distress; and (2) wrongful foreclosure. *Id.* at ¶¶ 49-67.

On February 4, 2015, Ocwen[2] filed a motion to dismiss, seeking dismissal of the trespass, intrusion upon seclusion, and wrongful foreclosure claims.[3] Def. Ocwen's Mot. to Dismiss, ECF [28]. On June 15, 2015, Magistrate Judge Thomas M. Coffin issued a Findings & Recommendation ("F&R") recommending that Ocwen's motion to dismiss be granted in part by dismissing plaintiff's claims for trespass, intrusion upon seclusion, and wrongful foreclosure. F&R, ECF [46], at 6. On July 30, 2015, U.S. District Judge Ann L. Aiken adopted Judge Coffin's F&R, modifying it in part to reflect a stipulated factual discrepancy, but otherwise dismissing the three claims as alleged against Ocwen. Order, ECF [52], at 3.

On April 21, 2017, after plaintiff's two cases were consolidated as noted in footnote one,

---

[1] On March 10, 2015, plaintiff filed a separate lawsuit against Altisource, Altisource Portfolio Solutions SA, and John Doe (an alleged employee of Altisource), listed as case no. 6:15-cv-00399. On December 19, 2016, Altisource Solutions, Inc. was substituted as the sole defendant in the case and all other defendants were dismissed with prejudice. Plaintiff's cases, 6:14-cv-00522 and 6:15-cv-00399, were consolidated on February 13, 2017. Order, ECF [70].

[2] Originally, this motion was a joint motion with Altisource Fulfillment Operations, Inc. However, the Altisource entity was voluntarily dismissed on April 15, 2015 before the motion was considered. Order, ECF [35]. Therefore, the motion was considered only as it related to claims against Ocwen.

[3] Plaintiff had also requested punitive damages, and the motion sought to dismiss this request as well. However, because this aspect of the history is not relevant to the present motion for summary judgment, it is not discussed in depth.

plaintiff filed a Third Amended Complaint, the currently operative complaint. At this point, the only defendants were Ocwen, Altisource, and Kitsap. 3d Amended Compl. Plaintiff brought four claims against all named defendants: (1) conversion; (2) violations of the OUTPA (3) negligence; and (4) negligent hiring, training, and/or supervision. *Id.* at ¶¶ 14-34. He brought a single claim for intentional infliction of emotional distress against OCWEN and Altisource. *Id.* at ¶¶ 36-44.

On October 5, 2017, plaintiff filed a motion for reconsideration of Judge Aiken's order adopting Judge Coffin's F&R and dismissing plaintiff's claims for trespass, intrusion upon seclusion, and wrongful foreclosure. Pl.'s 1st Mot. for Recons., ECF [97]. Plaintiff sought reconsideration of the portion of the order dismissing his wrongful foreclosure claim. *Id.* at 3-4. On December 18, 2017, Judge Aiken issued an order denying plaintiff's motion, stating, "I find no error in my decision to grant OCWEN's motion to dismiss plaintiff's wrongful foreclosure claim." Op. & Order, ECF [130], at 9.

On October 27, 2017, Ocwen filed a motion for summary judgment, seeking summary judgment on all five claims. Def. Ocwen's 1st Mot. for Summ. J. ("Def.'s 1st Mot."), ECF [110]. On that same day, Altisource also filed a motion for partial summary judgment, seeking summary judgment on plaintiff's conversion, OUTPA, negligent hiring and supervision, and intentional infliction of distress claims. Def. Altisource's Mot. for Partial Summ. J., ECF [112].

On November 1, 2018, plaintiff filed a motion to certify the following question to the Oregon Supreme Court:

> "Under Oregon's lien theory of mortgages and ORS 86.010, can a borrower and lender enter into a contractual agreement prior to default that allows the lender to enter, maintain, and secure the encumbered property prior to foreclosure?"

Pl.'s Mot. to Certify Question to Or. Supreme Ct., ECF [153], at 1. On February 28, 2019, Judge Coffin issued an F&R recommending that plaintiff's motion to certify question be denied, that Ocwen's motion for summary judgment be granted in full, and that Altisource's motion for partial summary judgment be granted in part as to the negligent hiring, training, and supervision claim, the conversion claim, and the punitive damages claim. F&R, ECF [163], at 4, 11, 13. On March 31, 2019, Judge Aiken adopted Judge Coffins' F&R, denying plaintiff's motion to certify question, granting Ocwen's motion for summary judgment in its

entirety, and granting Altisource's motion for partial summary judgment in part. Order, ECF [175].

On April 29, 2019, Altisource filed a motion for reconsideration of Judge Aiken's March 31st Order, requesting that the order be modified to also dismiss plaintiff's UTPA claim as alleged against Altisource. Def. Altisource's Mot. for Recons., ECF [178]. Kitsap joined Altisource's motion. Def. Kitsap's Mot. for Joinder, ECF [179]. On August 15, 2019, plaintiff also filed a motion for reconsideration of Judge Aiken's March 31st Order, seeking reconsideration of the denial of plaintiff's motion to certify a question. Pl.'s 2d Mot. for Recons., ECF [187]. On January 7, 2020, Judge Aiken granted Altisource's motion for reconsideration and amended her March 31st Order to dismiss plaintiff's UTPA claim against Altisource. Op. & Order, ECF [196], at 5-6. On January 8, 2020, Judge Aiken denied plaintiff's motion for reconsideration. Op. & Order, ECF [197].

On May 5, 2020, judgment was entered dismissing defendant Ocwen from the case. Judgment, ECF [205]. On May 26, 2020, plaintiff appealed the judgment to the Ninth Circuit Court of Appeals. Pl.'s Notice of Appeal, ECF [207]. His appeal included the following bases:

> "1. The Aug 14, 2015 Order dismissed Appellant's claims of trespass & intrusion upon seclusion, and stated: 'Plaintiff consented to entry if "[Plaintiff] fail[ed] to perform the covenants and agreements contained in [DOT]."' This violated OR trespass law, ORS 86.010, and Art. 1, Section 9 of the OR Constitution. The genera rule is that a contract may not be enforced if it is illegal, or cannot be performed without violating a statute. OCWEN, through its conduct and the conduct of its predecessor, waived its right to strictly enforce the terms of the contract after rejection of Appellant's reinstatement check. The Order also denied Appellant's motion to compel production of Freddie Mac forms pertaining to custody of Note after admission of existence. The laws of OR govern enforcement of a DOT.
> "2. The March 31, 2019 Order dismissed Appellant's claim for punitive damages & denied Appellant's motion to certify a question with no controlling precedent to the OR Supreme Court[.] . . . The WA Supreme Court answered 'no' as applied to identical DOT and statute."

*Id.* at 2 (citations omitted).

On June 15, 2020, plaintiff filed another motion for reconsideration, seeking reinstatement of his conversion and negligent hiring, training, and supervision claims against Altisource. Pl.'s 3d Motion for Reconsideration, ECF [209]. Judge Aiken denied that motion on February 5, 2021. Order, ECF [221].

On July 15, 2022, the Ninth Circuit issued its opinion on plaintiff's appeal, reversing the decision in part, and affirming it in part. *Santoro v. Ocwen Loan Servicing, LLC*, No. 20-35484, 2022 WL 2764751, at *1 (9th Cir. July 15, 2022). Specifically, the court determined that this Court erred by dismissing plaintiff's trespass and intrusion upon seclusion claims, as alleged against Ocwen. *Id.* at *1-2. The claims had initially been dismissed because plaintiff "consented to entry if [plaintiff] fail[ed] to perform the covenants and agreements contained in [Deed of Trust]," and because plaintiff "defaulted, and thus failed to perform the covenants and agreements within the Deed of Trust." *Id.* at *1 (internal quotation marks omitted). However, the Ninth Circuit agreed with plaintiff that paragraph 9(a) of the deed of trust was unenforceable because it violated Oregon Revised Statute ("ORS") § 86.010 by authorizing Ocwen "to recover possession of the property without a foreclosure and sale." *Id.* (citing *Teal v. Walker*, 111 U.S. 242, 252 (1884) and *Jordan v. Nationstar Mortg., LLC*, 374 P.3d 1195, 1201-02 (Wash. 2016)).

Second, the Ninth Circuit affirmed the grant of summary judgment on the conversion claim against Ocwen because Kitsap and Altisource were independent contractors, not Ocwen's employees. *Id.* at *2. Thus, the court held that Ocwen could not be held vicariously liable for the alleged tortious conduct of Kitsap or Altisource. *Id.*

Third, the Ninth Circuit held that this Court erred by granting summary judgment to Ocwen on plaintiff's UTPA claim. *Id.* First, the court held that Ocwen did not provide sufficient evidence that it had a reasonable basis for believing that the Property was abandoned. *Id.* at *3. The court noted that Ocwen's evidence included a report from Altisource determining that the Property was "apparently" not occupied; however, it found this evidence insufficient to provide a reasonable basis for believing that the Property was abandoned. *Id.* In making this finding, the court noted that the definition of "abandonment" differs from that of "vacancy," and thus a determination of apparent vacancy was not the equivalent to a determination of abandonment. *Id.*

Thus, the court held that plaintiff had raised a triable issue of fact regarding whether Ocwen should have known that plaintiff had not abandoned the property. *Id.* Specifically, the court highlighted the discrepancies in the Altisource reports, noting that the property inspection report from February 2014

that indicated the Property was vacant showed photos of a different property than the property inspection report from only a month prior, and that the property inspection report from a month prior, which showed a picture of the Property, indicated that the Property was occupied and in good condition. *Id.* Additionally, the court noted that, although Ocwen maintained that it had sent plaintiff a 15 Day Vacancy letter, plaintiff alleged that he never received the letter and Ocwen could not produce a copy of the letter, or proof that it had been mailed. *Id.* The court highlighted that Ocwen's representative had stated that Ocwen generally kept copies of such letters on file. *Id.* Based on these two factors, the court held that a jury could reasonably find that the letter was never mailed and that Ocwen lacked a sufficient basis for concluding that plaintiff had abandoned the property. *Id.*

Finally, the court addressed Ocwen's argument that its conduct could not be deemed "willful" under the UTPA because Altisource was the party contractually responsible for making abandonment determinations. *Id.* The court rejected this argument, finding that Ocwen could not delegate this responsibility and discharge its own duty under the deed of trust without plaintiff's consent. *Id.* Additionally, the court highlighted that Ocwen's contract with Altisource assigned Altisource only the task of determining if a property was *vacant*, not *abandoned*. *Id.* Thus, the court held that Ocwen ultimately retained the duty to determine whether the property was abandoned, and a jury could reasonably find that it should have known that additional investigation was needed before concluding that the Property was abandoned. *Id.*

After the Ninth Circuit's decision, the case was remanded to this Court and Ocwen was re-listed as a defendant. On November 30, 2022, plaintiff filed a Motion to Vacate Opinions and Order, seeking to vacate orders and judgments that were contrary to the Ninth Circuit's findings. Pl's Mot. to Vacate Ops. & Orders, ECF [258]. On July 7, 2023, this Court issued an opinion and order denying plaintiff's motion, but setting forth which claims remained viable following the Ninth Circuit's remand. Op. & Order, ECF [285]. Specifically, this Court found that the following claims remained viable against

Ocwen: (1) trespass; (2) intrusion upon seclusion; and (3) UTPA violation.[4] *Id.* at 4. On January 5, 2023, Ocwen filed the motion for summary judgment presently before the Court, seeking dismissal of the three remaining claims.

## DISCUSSION

### A.  Trespass & Intrusion Upon Seclusion Claims

Trespass is a tort claim caused by "an actionable invasion of a possessor's interest in the exclusive possession of land." *Martin v. Reynolds Metals Co.*, 221 Or. 86, 90, 342 P.2d 790 (1959), *cert den.*, 362 U.S. 918 (1960). Intrusion upon seclusion is a tort claim caused by "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns[.]" *Mauri v. Smith*, 324 Or. 476, 482, 929 P.2d 307 (1996) (internal quotation marks omitted). Ocwen argues that summary judgment is appropriate on plaintiff's trespass and intrusion upon seclusion claims because these claims are predicated on actions taken by Altisource, Kitsap, and Faris, and Ocwen cannot be held vicariously liable for the actions of its independent contractors.

Although a principal is generally liable for "all torts committed by its employees while acting within the scope of their employment," a principal is usually not liable in tort for injuries "caused by the actions of its agents who are not employees." *Vaughn v. First Transit, Inc.*, 346 Or. 128, 137, 206 P.3d 181 (2009). In assessing this Court's dismissal of plaintiff's conversion claim, the Ninth Circuit conclusively held that that Kitsap, Altisource, and their employees were Ocwen's independent contractors. Thus, Ocwen could not be held vicariously liable for conversion based on those entities', or their agents', actions.

Plaintiff's trespass and intrusion upon seclusion claims are premised on the same facts as his conversion claim. He states, "Sometime between 10 a.m. and 2:30 p.m. agents of Defendants entered the front door to the entry porch of Plaintiff's residence and then forcefully broke in and entered through a second entry door." 3d Amended Compl. ¶ 9. Additionally, he states, "Defendants, despite having no order

---

[4] As noted in the July 7th opinion and order, the only remaining defendant at this stage of the case is Ocwen. Op. & Order 2.

from the court in the foreclosure action, entered and winterized the house. . . Defendants further disturbed the personal effects of Plaintiff including personal papers[.]" *Id.* ¶ 10. In his declaration in support of his statement for special damages, plaintiff identified the individuals who he believed had entered his home. 1st Decl. of Stephen A. Santoro, ECF [85], at ¶ 9. First, he noted that a paper was taped to his front door from Altisource. *Id.* ¶ 5. Second, he identified "agents of Defendants" as the ones who were "given access to [his] home," including "Carl Faris who was allegedly training Lawrence Vanhoof[,] . . . Michelle Vanhoof[,] and Bonni Bolle." *Id.* ¶ 9.

Because plaintiff's trespass and intrusion upon seclusion claims are, like his conversion claim, based on the actions of Altisource, Kitsap, and their employees or independent contractors, the Ninth Circuit's rationale in affirming the dismissal of plaintiff's conversion claim applies with equal force to his trespass and intrusion upon seclusion claims. That is, like the conversion claim, Ocwen cannot be held vicariously liable for Altisource's, Kitsap's, or their employees' alleged trespass and intrusion upon seclusion.

However, plaintiff argues that such a finding would "fl[y] in the face of the Ninth Circuit Court of Appeal's July 15, 2022 decision," which reversed the dismissal of the trespass and intrusion upon seclusion claims. Pl.'s Resp. to Def.'s 2d Mot. for Summ. J., ECF [274], at 1. While it is true that the Ninth Circuit reversed the initial dismissal of these claims, that reversal addressed whether dismissal was appropriate under Ocwen's theory that plaintiff had consented to the entry through the Deed of Trust. Ocwen did not raise the issue of vicarious liability in its motion to dismiss, thus this Court did not address that basis for dismissing the trespass and intrusion upon seclusion claims. Consequently, the Ninth Circuit did not address this basis when it reversed the dismissal of those claims. That is, the Ninth Circuit addressed the rationale that was before it: whether the claims could properly be dismissed based on the language of the deed of trust. Although the Ninth Circuit held that the claims could not be dismissed on that basis, the Ninth Circuit decision does not preclude Ocwen from raising an alternative basis for dismissal at the summary judgment stage.

Based on the Ninth Circuit's assessment that Ocwen cannot be held vicariously liable for the allegedly tortious conduct of Altisource, Kitsap, or their agents because neither the entities nor the individuals were Ocwen's employees, summary judgment is appropriate on plaintiff's trespass and intrusion upon seclusion claims.

**B.    UTPA**

The UTPA provides a private right of action for any person who suffers an "ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful" by the UTPA. Or. Rev. Stat. § 646.638(1) (2014). To successfully make a UTPA claim, a plaintiff most prove: (1) a violation of ORS § 646.608(1); (2) causation; (3) damages; and (4) willfulness by the defendant. *Colquitt v. Mfrs. & Traders Trust Co.*, 144 F. Supp. 3d 1219, 1231 (D. Or. 2015). A willful violation is "when the person committing the violation knew or should have known that the conduct of the person was a violation." Or. Rev. Stat. § 646.605(10) (2014). Proving that a person or entity should have known that its conduct was a violation usually "requires no more than proof of ordinary negligence." *State ex rel. Redden v. Disc. Fabrics, Inc.*, 289 Or. 375, 385, 615 P.2d 1034 (1980). Plaintiff alleges that Ocwen violated the following provisions of ORS § 646.608(1):

> "A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:
> . . . .
> "(m) Performs service on or dismantles any goods or real estate if the owner or apparent owner of the goods or real estate does not authorize the service or dismantling.
> . . . .
> "(u) Engages in any other unfair or deceptive conduct in trade or commerce."

*Id.* § 646.608(1)(m) & (u) (2014).

Ocwen raises two arguments for why the UTPA claim must be dismissed. Because one of those arguments is procedural, it is addressed first.

1.    *2010 Amendment to the UTPA*

Put succinctly, Ocwen argues that plaintiff's UTPA claim must be dismissed because the

UTPA does not apply to claims that arise from loans issued prior to 2010.[5]  Prior to 2010, the UTPA did not apply to "loans or extensions of credit."  *Lamm v. Amfac Mortg. Corp.*, 44 Or. App. 203, 204, 605 P.2d 730 (1980); *see* H.B. 3706, 75th Leg., 1st Spec. Sess. (Or. 2010) (amending ORS § 646.605(6) to include "loans and extensions of credit" in definition of "real estate, goods or services").  The Oregon legislature did not express an intent that the amendment apply retroactively, and numerous decisions from this district have determined that the UTPA does not apply to mortgage loans when the deed of trust was created before the 2010 amendment.  *See Nelson v. Fay Servicing, LLC*, No. 3:222-cv-01911-HZ, 2023 WL 6122685, at *10 (D. Or. Sept. 15, 2023) (compiling cases); *see also State v. Tucker*, 90 Or. App. 506, 509, 753 P.2d 427 (1988) (explaining that statutes do not apply retroactively "if doing so will impair existing rights, create new obligations or impose additional duties with respect to past acts").

It is undisputed that plaintiff's loan and deed of trust were issued prior to the 2010 amendment to the UTPA.  Plaintiff, however, argues that his UTPA claim remains viable because it involves "the professional services of a nonlender attempting to service [his] loan."  Pl.'s Supp. Resp. in Opp'n, ECF [293], at 1-2.  The Court agrees that, in some circumstances, the UTPA may apply to a non-lender who provides loan-related professional services.  In *Cullen v. Investment Strategies, Inc.*, the Oregon Court of Appeals acknowledged such an exception to the general rule that the UTPA does not cover claims arising from loans or extensions of credit.  139 Or. App. 119, 911 P.2d 936 (1996).  In that case, the plaintiffs sued a defendant mortgage broker under the UTPA for making misrepresentations about the mortgage loan and failing to disclose certain information about the mortgage loan.  *Id.* at 121.  The trial court granted the defendant's motion to dismiss, finding that mortgage brokers were exempt from the UTPA because their business was indirectly related to the lending of money and the extension of credit.  *Id.*

The Oregon Court of Appeals reversed in part, holding that the trial court erred by

---

[5] Ocwen first raised this argument at oral argument, thus the argument was not presented in OCWEN's initial pleadings.  Normally, arguments raised outside of a party's initial motion will not be considered; however, in the interest of expediency, the parties were given an opportunity to file supplemental briefing on this issue.  Therefore, the Court will consider this argument.

dismissing the portions of the plaintiffs' UTPA claim that relied on the defendant's failure to disclose specific information. *Id.* at 128-29. In arriving at this decision, the court reviewed its own past decisions on the applicability of the UTPA to loans, as well as a decision from the Oregon Supreme Court. *Id.* at 123-27. From this review, the court determined that (1) "a lender's material nondisclosures or misrepresentations to a borrower concerning the terms of a loan are not actionable under the UTPA," and (2) "professional services rendered to lenders generally cannot give rise to UTPA liability." *Id.* at 127. However, the court found that services from *non-lenders* could be subject to the UTPA when "borrowers retain the professional services of a non-lender in connection with a nonbusiness (*i.e.*, personal, family, or household purpose) loan," even if the loan itself fell outside the scope of the UTPA. *Id.* Notably, the court affirmed dismissal of the plaintiffs' UTPA claim to the extent that plaintiffs relied on the defendant's "material nondisclosures or misrepresentations concerning the terms of [the] loan itself." *Id.* at 128. That is, the court held that the plaintiffs' UTPA claim was not viable insofar as it alleged nondisclosures and misrepresentations about the loan's attributes. *Id.* Essentially, the court's holding determined that the defendant could be liable under the UTPA only to the extent that he made material misrepresentations and nondisclosures that were related to his brokerage services, rather than the terms of the loan. *Id.*

Although there have been no additional Oregon state cases addressing this issue, some cases from this District have analyzed whether UTPA claims against loan servicers are viable when the loan at issue was issued prior to the 2010 amendments. For example, in *Collis v. Rushmore Loan Management Services LLC*, No. 6:17-cv-02062-JR, 2019 WL 2488705 (D. Or. Feb. 7, 2019), U.S. District Judge Michael McShane reviewed Magistrate Judge Mustafa T. Kasubhai's F&R, which recommended granting the defendant's motion for summary judgment against the plaintiff's UTPA claim. The plaintiff's UTPA claim was based on the defendant loan servicer's intentional neglect of its duties as her mortgage loan servicer, including failing to pay her property taxes as promised, misrepresenting that the taxes had been paid, failing to return phone calls, and refusing to provide an accounting. *Id.* at *1. The defendant moved for summary judgment, arguing that the plaintiff's UTPA claim was not viable because it was based on a loan that originated before the 2010 amendments. *Id.*

13

Judge McShane rejected the F&R and denied the defendant's motion, relying on *Cullen* to find that "[a] determination that a plaintiff cannot pursue a claim under the UTPA based on a loan or loan modification . . . does not bar UTPA claims against the servicer of a loan." *Id.* at *2. In relevant part, the court highlighted the fact that the plaintiff's claims were not related to the loan or loan modification, but rather focused on the "[d]efendant's actions—or lack thereof—in servicing the loan." *Id.*

Similarly, in *Trachsel v. Litton Loan Servicing, LP*, Magistrate Judge John Acosta denied a defendant loan servicer's motion for summary judgment where the plaintiff had alleged claims against the defendant under the UTPA. No. 09-1053-AC, 2011 WL 5439215, at *1 (D. Or. Nov. 9, 2011). In that case, the plaintiff's UTPA claim was based on allegations that the defendant misrepresented that the foreclosure was on hold pending review of a loan modification, that a decision on the loan modification was on hold, that the plaintiff did not need to notarize the modification application, and that the modification application was complete. *Id.* at *5. In denying the defendant's motion for summary judgment, the court emphasized that "all of [the plaintiff's] allegations with respect to his UTPA claim arise from [the defendant's] conduct in conducting the modification and foreclosure processes, in particular those misrepresentations that ultimately resulted in foreclosure of [the plaintiff's] property." *Id.* Therefore, the court held that the plaintiff's "allegations cannot be characterized as pertaining to the lending of money, or the terms of a loan or its modification. Rather, the allegations are more accurately characterized as allegations arising from a loan servicing relationship." *Id.*

More recently, in *Nelson v. Fay Servicing, LLC*, U.S. District Judge Marco Hernández granted the defendant loan servicer's motion to dismiss the plaintiffs' UTPA claim. 2023 WL 6122685, at *1. In that case, the plaintiffs brought a UTPA claim against the loan service provider currently servicing their mortgage loan. *Id.* at *2-3. The plaintiffs alleged that the defendant, along with the predecessor loan servicer companies, had erroneously been charging the plaintiffs late fees and failing to apply their mortgage payments to the mortgage loan. *Id.* at *3. The defendant moved to dismiss the UTPA claim because the loan had originated prior to the 2010 amendments. *Id.* at *10. In granting the motion to dismiss, the court addressed the decision in *Collis*, but distinguished it by finding that the plaintiffs did not "allege

14

[the defendant] misrepresented the quality or character of its services[.]" *Id.* at *10-11.

In *Mikityuk v. Northwest Trustee Services., Inc.*, U.S. District Judge Owen Panner granted the defendants' motion to dismiss the plaintiffs' UTPA claim. 952 F. Supp. 2d 958, 962 (D. Or. 2013). In that case, the plaintiffs alleged a UTPA claim against the loan service provider, the lender, and Mortgage Electronic Registration Systems, Inc. ("MERS") after their property was sold at a foreclosure sale. *Id.* at 960. In granting the defendants' motion to dismiss, the court's analysis was brief: because the loan originated prior to the 2010 amendments, the UTPA did not apply to the plaintiffs' UTPA claim. *Id.* at 962.

In *Roisland v. Flagstar Bank, FSB*, U.S. District Judge Michael Mosman similarly granted the defendants' motion to dismiss the plaintiff's UTPA claim. 989 F. Supp. 2d 1095, 1108 (D. Or. 2013). In that case, the plaintiff had alleged, among other claims, a UTPA claim against the loan service provider, the lender, MERS, and the subsequent purchaser of her property. *Id.* at 1107. The basis of the plaintiff's claim was that the defendants had misrepresented their authority to foreclose, recorded an assignment of the deed of trust that contained false information, assessed improper and unauthorized fees or charges, and caused confusion about the parties' relationships, rights, and services. *Id.* In granting the motion to dismiss, the court again provided only a brief analysis. After noting that the UTPA was not applicable to loan transactions that occurred prior to 2010, the court held that the plaintiff's UTPA claim "arises from the loan she received and the deed of trust she granted in 2009." *Id.* at 1108. Therefore, the court dismissed her UTPA claim against all defendants with prejudice. *Id.*

In reviewing the relevant caselaw, the Court acknowledges that the parties have cited no cases, nor has the Court identified any, that address the precise issue in this case. That is, the Court can identify no cases that address whether a loan servicer may be liable under the UTPA for the services it provides. Unlike *Cullen* and the subsequent district court cases in which summary judgment was denied, plaintiff in this case is not alleging that Ocwen made misrepresentations about its services. In addition, unlike the cases in which motions to dismiss were granted, plaintiff is also not alleging that Ocwen wrongfully foreclosed on his home. In some respect, *Nelson* is the most analogous case because it considered a UTPA claim that was directly related to a loan servicer's conduct in effectuating the loan

servicing relationship.

However, the Court is not convinced by the rationale in *Nelson*. In essence, the court in *Nelson* distinguished the plaintiffs' UTPA claim by focusing on the fact that that plaintiffs did not allege that the loan servicer had made misrepresentations, but rather alleged only that the loan servicer's conduct in effectuating the loan servicing relationship was wrongful. Yet, this narrow application of the *Cullen* exception seems at odds with the rationale of both *Cullen* and the UTPA. *Cullen* expressly stated that "the professional services of a non-lender in connection with a nonbusiness . . . loan . . . fall within the UTPA, even though the loan itself does not." 139 Or. App. at 127.

The Court finds the rationale of *Collis* and *Trachsel* more persuasive because they more closely align with the reasoning in *Cullen*. Plaintiff's UTPA claim is not related to the terms of the loan or specific attributes of the loan. Rather, his claim is related to the services provided by Ocwen as a loan servicer; namely, the property preservation procedures that it completed. Like the plaintiffs in *Trachsel* and *Collis*, plaintiff's allegations arise from Ocwen's conduct and services. Although those services are *related* to a loan issued before 2010, plaintiff's specific allegations do not *implicate* the terms of the loan itself. Put another way, in carrying out property preservation procedures, Ocwen was not in the business of lending money, which is the context in which the Oregon Court of Appeals first stated that the UTPA, prior to 2010, did not apply to loans or extensions of credit. *See Lamm*, 44 Or. App. at 204 (holding that UTPA did not apply to plaintiff's claim that defendant mortgage company misrepresented discount fee that plaintiffs would pay for government-insured loan). Instead, Ocwen was providing services in connection with an already issued nonbusiness loan, and services by a non-lender may fall under the UTPA even if they are made in connection with a nonbusiness loan.

Ocwen's argument to the contrary, that its services are inherently tied to the loan because its actions were authorized by the deed of trust, is unpersuasive. A non-lender's services may still be actionable under the UTPA, even if connected to a nonbusiness loan. Thus, Ocwen's belief that its actions were authorized under the deed of trust does not impact the fact that plaintiff's allegations are aimed solely

at Ocwen's services and are actionable under the UTPA.[6]

    2.    *Willful Violation of UTPA*

Substantively, Ocwen argues that the UTPA claim must fail because plaintiff cannot establish that he "suffered an ascertainable loss of money or property" that is the result of a "willful" violation of the UTPA. Def.'s 2d Mot. 12 (quoting Or. Rev. Stat. § 646.638; citing *Scott v. W. Int'l Surplus Sales, Inc.*, 267 Or. 512, 516, 517 P.2d 661 (1973) and *Pearson v. Phillip Morris, Inc.*, 358 Or. 88, 117, 361 P.3d 3 (2015)). Ocwen's arguments focus on the "willful" aspect of the statute, and are premised on three bases: (1) any actions taken on the property were committed by Altisource, which Ocwen contractually required to comply with applicable law; (2) Ocwen utilized a multi-step process to determine whether the property was abandoned before confirming property preservation procedures; and (3) Ocwen adhered to its process, including conducting two separate inspections that reported that the Property was vacant and sending plaintiff an inquiry letter regarding whether the Property was abandoned.

As already discussed, the Ninth Circuit reversed the grant of summary judgment on plaintiff's UTPA claim against Ocwen after determining that, based on the available evidence, a jury could reasonably find that Ocwen should have known that additional investigation was necessary before concluding that the property was abandoned. *Santoro*, 2022 WL 2764751, at *3. As an initial matter, Ocwen's first basis for summary judgment is precluded by the Ninth Circuit's judgment. The Ninth Circuit conclusively held that Ocwen could not delegate its responsibility to ensure that the Property was abandoned to Altisource without plaintiff's approval. *Id.* Thus, the fact that Altisource was the entity that performed the procedures on the Property does not foreclose Ocwen's potential liability. Additionally, as the Ninth Circuit noted, Ocwen contracted with Altisource to determine whether a property was occupied, not whether it was abandoned. *Id.*

---

[6] For this same reason, Ocwen's contention that it is both the lender and the loan servicer does not disrupt the Court's findings. Putting aside the fact that Ocwen's contention that it is the lender is controverted by its own submissions, *see* Decl. of Howard R. Handville, ECF [269], at ¶ 4 ("Ocwen is the current loan servicer with respect to loan at issue in this action . . . . Ocwen was the servicer-in-fact . . . with respect to the Santoro loan.), the context of plaintiff's allegations relates only to OCWEN's conduct as a loan servicer.

However, the evidence that the Ninth Circuit reviewed regarding Ocwen's process for assessing whether a property was abandoned differs slightly from the evidence presently before the Court. In its prior motion for summary judgment, OCWEN had relied primarily on the February 17, 2014 property inspection report which indicated that the Property was vacant, Faris' declaration regarding the state of the Property when he entered to perform property preservation procedures, and the 15 Day Vacancy letter. Def.'s 1st Mot. 15; Def. Ocwen's Reply in Support of 1st Mot. for Summ. J., ECF [135], at 8-9. Now, Ocwen relies on the February 17, 2014 property inspection report, the 15 Day Vacancy letter, and a second inspection request ordered on March 7, 2014, in conjunction with the property preservation order issued on March 6, 2014. Def. 2d Mot. 13-14. Additionally, Ocwen has presented new evidence in the form of a declaration from a Senior Loan Analyst employed by Ocwen. Decl. of Howard R. Handville, ECF [269]. In his declaration, Mr. Handville states, "[I]n my experience with Ocwen's business records, the existence of an entry in the REALServicing Transaction History Notes is the best indication of whether correspondence was sent" because "the entry in REALServicing is created as part of the process of mailing the letter." *Id.* ¶ 8. Further, he states, "[T]he sending of the 15 day vacancy letter generated the entry that appears on February 19, 2014 in the REALServicing Transaction History Notes. In my experience . . . , the entry stating that the 15 day vacancy letter was sent can only exist in the REALServicing Transaction History Notes if the letter is actually sent." *Id.* ¶ 9.

Put simply, the primary differences in the evidence presented in Ocwen's first motion for summary judgment and the motion presently before the Court are: (1) The second property inspection report; and (2) Mr. Handville's sworn statements that the 15 Day Vacancy Letter entry in REALServicing would not generate unless the letter was sent.

As for the second property report, the REALServicing Transaction History notes indicate that, although it was ordered on March 7, 2014, the actual report was not entered until March 14, 2014. Although Ocwen asserts that the second inspection request "provided a second opportunity to confirm the status of the property *before any actions were taken toward property preservation*," the property preservation practices took place on March 11, 2014, three days *before* Ocwen apparently received the

second property inspection report.[7] Def.'s 2d Mot. 14 (emphasis added); *see* Peck. Decl., Ex. E, at 17-19. That is, when the property preservation took place, Ocwen had not received the property inspection report that was ordered on March 7, 2014, and the only inspection report that Ocwen reasonably could have relied upon was the February 19, 2014 report. As the Ninth Circuit noted, this report contained "obvious discrepancies" from the property inspection report received in January of 2014. *Santoro*, 2022 WL 2764751, at * 3.

As for Mr. Handville's declaration, the Court is not convinced that this evidence is a sufficient basis for summary judgment. Plaintiff alleges that he never received the 15 Day Vacancy letter. Ocwen, admittedly, has no copy of the letter. The only proof that Ocwen offers that the letter was sent is the REALServicing notation and Mr. Handville's declaration. Although Mr. Handville states that sending the letter generates the entry, he provides no information on *how* this occurs. At the summary judgment stage, all facts and reasonable inferences are construed in favor of the non-moving party. In this instance, the lack of proof that the letter was sent, although aided by the additional declaration, means a reasonable jury could find that the letter was not sent. In combination with the discrepancies in the property inspection reports, a reasonable jury could determine that Ocwen did not have a reasonable basis for concluding that the Property was abandoned. Therefore, a genuine dispute of material fact exists regarding whether Ocwen "knew or should have known" that its conduct was a violation. Or. Rev. Stat. § 646.608(1)(m) (2014).

---

[7] The Court notes that, in its submitted evidence supporting its motion for summary judgment, Ocwen declined to include the REALServicing Transaction History notes page that included both the date that the property inspection report was actually received and the date that the property preservation orders were marked as completed. Instead, Ocwen provided only the page that indicated when the report and property preservation orders were issued. Nonetheless, the dates are readily available from exhibits included in a declaration submitted for one of Ocwen's prior motions, which Ocwen referenced in its current motion for summary judgment.

## CONCLUSION

Accordingly, defendant Ocwen Loan Servicing, LLC's Motion for Summary Judgment, ECF [267], is GRANTED in part, and DENIED in part. Plaintiff's claims for trespass and intrusion upon seclusion are DISMISSED, but plaintiff's UTPA claim survives.

IT IS SO ORDERED.

DATED this 1st day of December, 2023.

_____
Adrienne Nelson
United States District Judge