IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHEN A. SANTORO,

               Plaintiff,

    v.

OCWEN LOAN SERVICING, LLC,

               Defendant.

Case No.: 6:14-cv-00522-AN (lead)
            6:15-cv-00399-AN
            (consolidated)

OPINION AND ORDER

This Court entered judgment and closed these consolidated cases on September 13, 2024, pursuant to plaintiff Stephen A. Santoro's filing of a notice of acceptance of offer of judgment made by defendant OCWEN Loan Servicing, LLC ("OCWEN"). Plaintiff filed the notice of acceptance of offer of judgment after the pretrial conference and four days before the scheduled trial. Now before the Court is plaintiff's motion for attorneys' fees and costs, as well as two requests for judicial notice relied upon by OCWEN in support of its opposition to plaintiff's motion for attorneys' fees and costs. The Court heard oral argument on May 22, 2025. For the reasons set forth below, OCWEN's first request for judicial notice is DENIED as moot; OCWEN's second request for judicial notice is DENIED; and plaintiff's motion for attorneys' fees and costs is GRANTED in part and DENIED in part. Plaintiff is awarded $117,593.87, consisting of $113,531.50 in attorneys' fees and $4,062.37 in costs.

## LEGAL STANDARD

### A.    Attorney Fees & Costs

#### 1.    *Attorney Fees*

In a diversity action such as this one, state law governs the award of attorney fees. *Avery v. First Resol. Mgmt. Corp.*, 568 F.3d 1018, 1023 (9th Cir. 2009); *Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1387 (9th Cir. 1987). Under Oregon law, attorney fees awards are governed by Oregon Revised Statutes ("ORS") §§ 20.075(1) and (2). Additionally, because plaintiff's sole remaining claim at

the time he filed the notice of acceptance of offer of judgment was his claim brought under Oregon's Uniform Trade Practices Act ("UTPA"), the UTPA's fee-shifting provision, ORS § 646.638(3), also applies.

The UTPA's fee-shifting provision provides that "[t]he court may award reasonable attorney fees and costs at trial and on appeal to the prevailing plaintiff in an action under this section."  Or. Rev. Stat. § 646.638(3).  Under the plain language of the UTPA, an award of attorney fees is discretionary. Nonetheless, "the Oregon Supreme Court has held that, even when the authorizing statute contains a permissive entitlement to attorney's fees, 'normally a "prevailing party" would be entitled to recovery attorney fees, barring unusual circumstances[.]'"  *Lunceford v. Carson*, No. 3:22-cv-1387-SI, 2024 WL 1193047, at *4 (D. Or. Mar. 20, 2024) (quoting *Exec. Mgmt. Corp. v. Juckett*, 274 Or. 515, 519, 547 P.2d 603 (1976) (en banc)).  Furthermore, awarding attorney fees in UTPA cases "assures that wronged consumers can obtain counsel to prosecute claims that otherwise might be impractical to pursue because such claims would require an expenditure of attorney time the value of which greatly exceeded the value of the goods or services in question[.]"  *Honeywell v. Sterling Furniture Co.*, 310 Or. 206, 213, 797 P.2d 1019 (1990).

Under ORS § 20.075(1), if a fee award is discretionary, rather than mandatory, then the subsection (1) factors should be first considered in determining whether to award fees.  Those factors are:

"(a)  The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
(b)  The objective reasonableness of the claims and defenses asserted by the parties.
(c)  The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
(d)  The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
(e)  The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
(f)  The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
(g)  The amount that the court has awarded as a prevailing party fee under ORS § 20.190.
(h)  Such other factors as the court may consider appropriate under the circumstances of the case."

If the court concludes that a fee award is appropriate, the court shall consider the factors set forth in both

subsections (1) and (2) to "determin[e] the amount of [the] award[.]"  Or. Rev. Stat. § 20.075(2); *see*

*McCarthy v. Or. Freeze Dry, Inc.*, 327 Or. 84, 190-91, 957 P.2d 1200 (1998), *op. clarifying decision on*

*recons.*, 327 Or. 185 (1998).  The ORS § 20.075(2) factors are:

> "(a)   The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
> (b)   The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
> (c)   The fee customarily charged in the locality for similar legal services.
> (d)   The amount involved in the controversy and the results obtained.
> (e)   The time limitations imposed by the client or the circumstances of the case.
> (f)   The nature and length of the attorney's professional relationship with the client.
> (g)   The experience, reputation and ability of the attorney performing the services.
> (h)   Whether the fee of the attorney is fixed or contingent.
> (i)   Whether the attorney performed the services on a pro bono basis or the award of attorney fees otherwise promotes access to justice."

A court analyzing the factors set forth in ORS § 20.075 should "includ[e] in its order a brief description or

citation to the factor or factors on which it relies[,]" however, the court "ordinarily has no obligation to

make findings on statutory criteria that play no role in the court's decision."  *Frakes v. Nay*, 254 Or. App.

236, 255, 295 P.3d 94 (2012).

The guidepost for a fee award is reasonableness: under ORS § 20.075(4), recovery is

limited to "a reasonable attorney fee."  *E.g.*, *Beck v. Metro. Prop. & Cas. Ins. Co.*, No. 3:13-cv-00879-AC,

2016 WL 4978411, at *12 (D. Or. Sept. 16, 2016) (citation omitted).  A "commonly applied and permissible

approach for determining the reasonableness of a fee award, even when the insured has retained counsel on

a contingency-fee basis[,]" is the "lodestar" method.  *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*,

255 Or. App. 525, 554, 300 P.3d 1224 (2013).  "The lodestar is calculated by multiplying the reasonable

hourly rate by the number of hours worked[,]" *Hosp. Mgmt., Inc. v. Preferred Contractors Ins. Co.*, No.

3:18-cv-00452-YY, 2023 WL 5042932, at *3 (D. Or. Mar. 23, 2023) (citing *Perdue v. Kenny A. ex rel.*

*Winn*, 559 U.S. 542, 552 (2010)); which factors in turn are addressed under ORS §§ 20.075(2)(a), (c), and

(g), *Rust-Oleum Corp. v. NIC Inds., Inc.*, No. 1:18-cv-01655-CL, 2025 WL 1982291, at *4 (D. Or. July 15,

2025).  "There is a strong presumption that the fee arrived at through the lodestar calculation is a reasonable

fee."  *Lunceford*, 2024 WL 1193047, at *4 (citing *Perdue*, 559 U.S. at 552).  Nonetheless, an adjustment to

the lodestar amount may be appropriate based on the remaining ORS § 20.075(2) factors and "when []
supported by the facts and circumstances of the case." *See Muller v. Country Mut. Ins. Co.*, No. 3:14-cv-
01345-MO, 2017 WL 6209701, at *10 (D. Or. Dec. 8, 2017) (internal quotation marks omitted) (quoting
*Beck*, 2016 WL 4978411, at *22).

       2.     *Costs*

       Awards of costs are generally governed by Federal Rule of Civil Procedure ("FRCP")
54(d), "even in diversity cases." *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022
(9th Cir. 2003). FRCP "54(d)(1) creates a presumption in favor of awarding costs to a prevailing party, but
the district court may refuse to award costs within its discretion." *Id.* (quoting FRCP 54(d)(1) and citing
*Ass'n of Mex.-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc)). Ultimately,
recoverable costs include "reasonable and necessary expenses incurred" related to litigation. *See Shum v.
Intel Corp.*, 682 F. Supp. 2d 992, 998 (N.D. Cal. Oct. 23, 2009) (citations omitted); *see also Tubbs v.
Sacramento County Jail*, 258 F.R.D. 657, 660 (E.D. Cal. Aug. 21, 2009) (citing *Alflex Corp. v.
Underwriters Lab'ys, Inc.*, 914 F.2d 175, 177 (9th Cir. 1990)) (describing the "taxable costs" allowed under
FRCP 54(d) as those delineated in U.S.C. § 1920 and the applicable local rules).

**B.**    **Judicial Notice**

      "Judicial notice under [Federal Rule of Evidence ("FRE")] 201 permits a court to notice an
adjudicative fact if it is not subject to reasonable dispute." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d
988, 998 (9th Cir. 2018). A fact is not subject to reasonable dispute if it is "generally known" or if it can
be "readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.
201(b)(1)-(2).

## BACKGROUND

      This action, which involves two consolidated cases, carries a factual and procedural history
spanning more than a decade. The Court summarizes pertinent background here.

      On March 31, 2014, plaintiff, represented by attorneys Manuel Hernandez ("Hernandez")
of Hernandez & Associates, LLC, and Bonner Walsh ("Walsh") of Walsh PLCC, commenced what is now

the lead case, *Santoro v. OCWEN Loan Servicing, LLC et al*, No. 6:14-cv-00522-AN ("*Santoro v. OCWEN*"). Compl., ECF [1].[1] The case was assigned to then-Magistrate Judge Thomas M. Coffin. Notice of Case Assignment, ECF [2]. Plaintiff initially asserted seven claims, for trespass; conversion; unlawful trade practices; negligence; negligent hiring, training, or supervision; intrusion upon seclusion; and intentional infliction of emotional distress ("IIED"). Compl. 2. Plaintiff also sought punitive damages. *Id.* at 13-14. Plaintiff asserted these claims against two defendants: OCWEN and Altisource Fulfillment Operations, Inc. ("Altisource Fulfillment"). *Id.* On August 20, 2014, plaintiff amended his complaint to add a third defendant, Kitsap Property Preservation LLC ("Kitsap"). First Am. Compl., ECF [15]. On December 15, 2014, plaintiff amended his complaint to add an additional claim for wrongful foreclosure. 2d Am. Compl., ECF [24].

On February 4, 2015, OCWEN and Altisource Fulfillment filed a motion to dismiss plaintiff's claims for trespass, intrusion upon seclusion, wrongful foreclosure, and request for punitive damages, ECF [28]. The parties then filed a stipulated motion for abatement, ECF [31], seeking to abate the case deadlines then in effect pending a ruling on the motion to dismiss, plaintiff's filing of a second case in federal court, and the parties' anticipated consolidation of the two cases. Judge Coffin granted the stipulated motion. Order of March 6, 2015, ECF [33].

On March 10, 2015, plaintiff, again represented by Hernandez and Walsh, filed what is now the companion case, *Santoro v. Altisource Solutions et al*, No. 6:15-cv-00399-AN ("*Santoro v. Altisource*"). *Santoro v. Altisource*, No. 6:15-cv-00399-AN, Compl., ECF [1]. The case was assigned to then-Chief Judge Ann L. Aiken. *Santoro v. Altisource*, No. 6:15-cv-00399-AN, Notice of Case Assignment, ECF [3]. In *Santoro v. Altisource*, plaintiff asserted six claims, for trespass; conversion; unlawful trade practices; negligence; negligent hiring, training, or supervision; and intrusion upon seclusion. *Santoro v. Altisource*, No. 6:14-cv-00399-AN, Compl., ECF [1]. Plaintiff asserted these claims against three defendants: Altisource Solutions, S.a.r.l. ("Altisource Solutions SARL"), Altisource Portfolio

---

[1] Unless otherwise stated, all ECF references in this Opinion and Order are references to the docket in the lead case, *Santoro v. OCWEN Loan Servicing, LLC et al*, No. 6:14-cv-00522-AN.

Solutions SA ("Altisource Portfolio"), and John Doe Altisource Co. ("John Doe Altisource"). *Id.*

On April 14, 2015, in *Santoro v. OCWEN*, plaintiff filed an unopposed motion to dismiss his claims against Altisource Fulfillment with prejudice. ECF [34]. Plaintiff explained that he no longer "believe[d] that this entity [was] the proper Altisource entity" and noted that he had filed *Santoro v. Altisource* and "w[ould] seek to consolidate the cases at a later date." *Id.* at 2. Judge Coffin dismissed the action with prejudice as to Altisource Fulfillment on April 15, 2015. ECF [35].

On June 15, 2015, still in *Santoro v. OCWEN*, Judge Coffin entered a Findings and Recommendation ("F&R"), recommending that OCWEN and Altisource Fulfillment's motion to dismiss be granted in part and denied in part, and that plaintiff's claims for trespass, intrusion upon seclusion, and wrongful foreclosure be dismissed. Order & F&R of June 15, 2015, ECF [46]. On July 14, 2015, a settlement conference was scheduled for July 30, 2015. Scheduling Order of July 14, 2015, ECF [50].

On July 8, 2015, in *Santoro v. Altisource*, plaintiff moved to abate the action pending the settlement conference set to take place in *Santoro v. OCWEN*. *Santoro v. Altisource*, No. 6:15-cv-00399-AN, Pl. Mot. for Ext. of Time & to Abate, ECF [13]. Judge Aiken stayed the case. *See Santoro v. Altisource*, No. 6:15-cv-00399-AN, Order of July 13, 2015, ECF [14]. When *Santoro v. OCWEN* did not settle, Judge Aiken lifted the stay. *Santoro v. Altisource*, No. 6:15-cv-00399-AN, Order of August 11, 2015, ECF [16].

On August 14, 2015, Judge Aiken adopted in part and modified in part Judge Coffin's F&R in *Santoro v. OCWEN* and dismissed plaintiff's claims for trespass, intrusion upon seclusion, and wrongful foreclosure. Order of August 14, 2015, ECF [52].

On January 8, 2016, in *Santoro v. Altisource*, Altisource Solutions SARL, Altisource Portfolio, and John Doe Altisource jointly moved to dismiss plaintiff's complaint for lack of personal jurisdiction or, in the alternative, plaintiff's claims for trespass and intrusion upon seclusion for failure to state a claim. *Santoro v. Altisource*, No. 6:15-cv-00399-AN, Defs. Mot. to Dismiss, ECF [30]. Plaintiff voluntarily withdrew his claims for trespass and intrusion upon seclusion, which were therefore dismissed, and the parties then completed jurisdictional discovery. *See Santoro v. Altisource*, No. 6:15-cv-00399-AN,

Order of March 30, 2016, ECF [41]. Thereafter, the parties jointly moved to dismiss Altisource Solutions SARL and Altisource Portfolio and to substitute Altisource Solutions, Inc. ("Altisource") as the sole party defendant in the action, which motion was granted. *See Santoro v. Altisource*, No. 6:15-cv-00399-AN, Order of December 19, 2016, ECF [65].

On February 13, 2017, *Santoro v. OCWEN* and *Santoro v. Altisource* were consolidated. Order of February 13, 2017, ECF [70]. As a result, *Santoro v. Altisource* was reassigned to Judge Coffin. *Santoro v. Altisource*, No. 6:15-cv-00399-AN, Notice of Case Reassignment, ECF [68]. On April 21, 2017, plaintiff filed a consolidated amended complaint. Am. Compl. Consol., ECF [76]. The complaint named three defendants, OCWEN, Altisource, and Kitsap, and set forth five claims, for conversion; violations of the UTPA; negligence; negligent hiring, training, and/or supervision; and IIED. Therein, plaintiff alleged that OCWEN, Altisource, and Kitsap committed "illegal acts during the pendency of a judicial foreclosure" of plaintiff's home, including entering his home without seeking or obtaining any court order allowing them access; evicting him; and confiscating his and his family's possessions in the process. *Id.* at 2.

In August through October of 2017, plaintiff, OCWEN, Altisource, and Kitsap briefed the issue of punitive damages. *See* Pl. Statement of Special Damages, ECF [84]; OCWEN Resp. Opp'n to Pl. Punitive Damages Statement, ECF [92]; Def. Altisource Resp. Opp'n Pl. Punitive Damages Statement, ECF [96]; Def. Kitsap Resp. Opp'n to Pl. Punitive Damages Statement, ECF [105]. Additionally, on October 5, 2017, plaintiff moved for reconsideration of the dismissal of his wrongful foreclosure claim. ECF [97]. On October 27, 2017, OCWEN filed a motion for summary judgment, ECF [110], and Altisource filed a motion for partial summary judgment, ECF [112], seeking summary judgment on all of plaintiff's claims except his negligence claim. Both of these motions again addressed punitive damages. The parties then, in relevant part, briefed the motions for reconsideration, summary judgment, and partial summary judgment. Judge Aiken denied plaintiff's motion for reconsideration by opinion and order dated December 18, 2017. ECF [130]. Thereafter, Judge Coffin stayed consideration of the pending motions for summary judgment and partial summary judgment pending completion of additional settlement negotiations. *See* Order of June 13, 2018, ECF [145].

On June 27, 2018, Hernandez filed a notice of withdrawal. ECF [146]. Hernandez's withdrawal came shortly after he was suspended from the practice of law for a period of thirty days. *See In re Hernandez*, 32 DB Rep. 72 (2018). On September 27, 2018, Walsh filed a notice of withdrawal. ECF [151]. The notice indicated that plaintiff had terminated their attorney-client relationship.

On October 23, 2018, the parties attended mediation but were unable to reach a settlement. *See* Am. Joint Status Report, ECF [149]; Joint Status Report, ECF [157]. In November 2018, plaintiff moved to certify three questions to the Oregon Supreme Court. ECF [153]. Then, on February 20, 2019, plaintiff sought leave to amend the complaint to again name Altisource Portfolio as a party defendant, arguing that the jurisdictional discovery he received that led to his voluntary dismissal of Altisource Portfolio was inaccurate. Pl. Mot. for Leave Am. Order Dismissing Altisource Portfolio, ECF [162]. On February 28, 2019, Judge Coffin entered an order denying plaintiff's motion to certify questions to the Oregon Supreme Court and an F&R recommending that plaintiff's motion to amend be denied, OCWEN's motion for summary judgment be granted, and Altisource's motion for partial summary judgment be granted in part and denied in part as to plaintiff's UTPA claim. F&R & Order of February 28, 2019, ECF [163]. The consolidated cases were thereafter reassigned from Judge Coffin to now-District Judge Mustafa T. Kasubhai. Notice of Case Reassignment, ECF [165]. Shortly thereafter, Judge Aiken adopted Judge Coffin's F&R in full. Order of March 31, 2019, ECF [175]. On April 24, 2019, Judge Kasubhai issued an F&R recommending that plaintiff's motion for leave to amend be denied with prejudice, ECF [176]. On April 29, 2019, Altisource moved for reconsideration of the ruling denying Altisource's partial motion for summary judgment as to the UTPA claim, ECF [178].

On May 10, 2019, plaintiff filed objections to the F&R, moved to disqualify Judge Kasubhai, and again sought to amend his complaint to re-name Altisource Portfolio as a party defendant. ECF [180]. Plaintiff then moved for a change of venue and to join the consolidated cases to a state court case plaintiff filed on March 1, 2019. ECF [182]. Additionally, on August 15, 2019, plaintiff moved for reconsideration of the denial of his motion to certify questions to the Oregon Supreme Court. ECF [187]. On September 19, 2019, Judge Aiken adopted Judge Kasubhai's F&R and denied plaintiff's motion for

leave to amend with prejudice.  ECF [193].  Shortly thereafter, Judge Aiken denied plaintiff's motion for change of venue and joinder.  Order of September 30, 2019, ECF [194].  Judge Aiken then granted Altisource's motion for reconsideration and dismissed plaintiff's UTPA claim as to Altisource, Op. & Order of January 7, 2020, ECF [196], and denied plaintiff's motion for reconsideration, Op. & Order of January 8, 2020, ECF [197].  The consolidated cases were then reassigned from Judge Kasubhai to Judge Aiken.  Notice of Case Reassignment.  ECF [198].

On March 10, 2020, OCWEN filed an unopposed motion for entry of judgment.  ECF [201].  Following a telephone status conference, Judge Aiken, noting that all claims against OCWEN had been dismissed, granted the motion and entered judgment dismissing OCWEN from the action.  Mins. of Proceedings of May 4, 2020, ECF [204]; J., ECF [205].  On May 26, 2020, plaintiff filed a notice of appeal and challenged the dismissal of his trespass and intrusion claims against OCWEN and the granting of summary judgment to OCWEN on his conversion and UTPA claims.  Notice of Appeal to Ninth Circuit, ECF [207]; *see* U.S.C.A. Mem. 9th Cir., ECF [243], at 2.  Plaintiff briefed and argued his appeal before the Ninth Circuit as a self-represented litigant, save for some assistance from certified law students at the University of Washington School of Law.

A few weeks later, on June 15, 2020, plaintiff again moved for reconsideration, this time seeking to revive his dismissed claims for conversion and negligent hiring, training, or supervision, against Altisource.  Pl. Mot. for Recons., ECF [209].  Plaintiff also moved for sanctions against Altisource.  Pl. Mot. for Imposition of Sanctions, ECF [210].  Judge Aiken deferred ruling on both motions pending a settlement conference and ordered plaintiff to provide specific damages information.  *See* Mins. of Proceedings of July 13, 2020, ECF [215].  The settlement conference was held on November 9, 2020, but the case did not settle.  *See* Mins. of Proceedings of November 9, 2020, ECF [218].  Thereafter, Judge Aiken denied plaintiff's motions for reconsideration and sanctions.  *See* Order of December 3, 2020, ECF [221]; Op. & Order of February 5, 2021, ECF [224].

On January 15, 2021, Altisource filed a motion for summary judgment, ECF [222], which Kitsap moved to join, ECF [229].  On March 15, 2021, plaintiff filed a motion to strike the parties' prior

joint motion to dismiss Altisource Solutions SARL and Altisource Portfolio and substitute Altisource, as well as to strike Kitsap's motion for joinder to Altisource's motion for summary judgment.  Pl. 1st Mot. & 2d Mot. to Strike, ECF [232].  Judge Aiken granted Altisource's motion for summary judgment and dismissed plaintiff's negligence claim as to Altisource, denied Kitsap's motion for joinder to Altisource's motion, and denied plaintiff's motions to strike.  Op. & Order of March 21, 2022, ECF [240].

On July 15, 2022, the Ninth Circuit ruled on plaintiff's appeal.  The Ninth Circuit reversed in part, affirmed in part, and remanded.  U.S.C.A. Mem. 9th Cir. 9.  Specifically, the Ninth Circuit held that the court erred in dismissing plaintiff's trespass and intrusion upon seclusion claims, properly granted summary judgment to OCWEN on plaintiff's conversion claim, and erred in granting summary judgment to OCWEN on plaintiff's UTPA claim.  *Id.* at 2, 4, 6.  On remand, plaintiff sought to reopen discovery, which request Judge Aiken denied.  Mins. of Proceedings of October 6, 2022, ECF [248].  Plaintiff also moved to vacate several opinions and orders that he alleged conflicted with the Ninth Circuit's mandate on appeal.  *See* Mot. to Vacate Ops. & Orders, ECF [258].  In relevant part, vacating the opinions as requested would have revived plaintiff's dismissed wrongful foreclosure and conversion claims,[2] and would have allowed him to again seek punitive damages.  *See* Op. & Order of July 7, 2023, ECF [285].  Subsequently, this Court denied the motion.  *Id.*

Meanwhile, on January 6, 2023, OCWEN filed another motion for summary judgment.  ECF [267].  Kitsap then moved for partial summary judgment, requested clarification, and moved to join OCWEN's motion for summary judgment.  ECF [270].  After the motions had been briefed, on June 20, 2023, these consolidated cases were reassigned from Judge Aiken to District Judge Adrienne Nelson.  Notice of Case Reassignment, ECF [283].  On July 6, 2023, now-Chief Judge Michael J. McShane held a settlement conference at which the case settled as to Kitsap and Altisource.  Mins. of Proceedings of July 6, 2023, ECF [284].  The next day, this Court reinstated OCWEN as a defendant as part of its ruling on

---

[2] In its opinion and order, this Court noted that revival of the conversion claim would explicitly conflict with the Ninth Circuit's mandate, which affirmed the dismissal of that claim.  The Court further noted that, while it had the power to reconsider portions of the orders that plaintiff sought to vacate that were not foreclosed by the Ninth Circuit's mandate, it declined to do so.  Op. & Order of July 7, 2023, ECF [285], at 4.

plaintiff's motion to vacate.  Op. & Order of July 7, 2023, ECF [285].  Since then, OCWEN has been the sole named party defendant.

On July 26, 2023, plaintiff moved for reconsideration of Judge Aiken's denial of his request to reopen discovery.  ECF [290].  The motion was later denied.  Order of February 13, 2024, ECF [301].  A few days after plaintiff moved for reconsideration, the Court heard oral argument as to OCWEN's pending motion for summary judgment.  Mins. of Proceedings of July 28, 2023, ECF [291].  On December 1, 2023, the Court granted in part and denied in part OCWEN's motion; specifically, the Court dismissed plaintiff's claims for trespass and intrusion upon seclusion, but allowed plaintiff's UTPA claim to proceed.  *See* Op. & Order of December 1, 2023, ECF [297].  The Court then scheduled a four-day jury trial, to begin on September 17, 2024.  Mins. of Proceedings of January 9, 2024, ECF [299].

On July 9, 2024, attorney Hope Del Carlo ("Del Carlo") filed a notice of appearance on plaintiff's behalf.  ECF [303].  Thereafter, plaintiff again raised the issue of punitive damages, which issue the parties again briefed.  *See* Joint Mem. Availability Punitive Damages Under UTPA, ECF [309].  The Court ruled that plaintiff could not pursue punitive damages.  Order of August 2, 2024, ECF [311].  The parties then filed a variety of pretrial filings, including OCWEN's first request for judicial notice, ECF [330], which OCWEN filed in support of its motions *in limine* and which is at issue in this Opinion and Order.  Also among the parties' pretrial filings was a motion by plaintiff for leave to file an amended complaint, ECF [338].  Specifically, plaintiff sought to add claims for violations of the Federal Debt Collection Practices Act ("FDCPA") and Oregon's Unlawful Debt Collection Practices Act ("OUDCPA") and, relatedly, again sought to recover punitive damages, this time in relation to the newly added claims.  Additionally, OCWEN moved for judgment on the pleadings.  ECF [347].  At the pretrial conference, the Court denied on the record both plaintiff's motion for leave to amend and OCWEN's motion for judgment on the pleadings.  *See* Mins. of Proceedings of September 6, 2024, ECF [350].

On September 8, 2024, two days after the pretrial conference and nine days before trial was set to commence, plaintiff filed a notice of acceptance of offer of judgment.  ECF [349].  Thereafter, the Court entered judgment pursuant to FRCP 68 and awarded plaintiff $35,044.53, plus "reasonable attorney's

fees and costs to be determined pursuant to [FRCP] 54(d)(2)."  J., ECF [352].

On October 5, 2024, plaintiff moved for attorneys' fees and costs.  Pl. Mot. for Att'y Fees & Costs ("Pl. Mot."), ECF [356].  On October 30, 2025, OCWEN filed objections to the fees, ECF [364] ("OCWEN Objs. (Fees)"), and costs, ECF [363] ("OCWEN Objs. (Costs)"), sought by plaintiff.  The same day, OCWEN requested that the Court take judicial notice of a variety of documents in support of OCWEN's objections.  ECF [366].

## DISCUSSION

### A.     Motion for Attorney Fees and Costs

####     1.     *Attorney Fees*

#####         a.     Entitlement to Fees

The majority of both parties' arguments center around the reasonableness of the amount of plaintiff's requested fees rather than plaintiff's entitlement to fees in the first instance.  The Court considers the parties' arguments regarding ORS § 20.075(1) as they relate to both entitlement and amount.  The Court addresses only those factors that it finds to be relevant.

The first relevant factor is "[t]he conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal."  Or. Rev. Stat. § 20.075(1)(a).  Plaintiff argues that OCWEN's conduct giving rise to these consolidated cases "was alleged to be reckless, willful, in bad faith or illegal"; that plaintiff's burden of proof at trial on his UTPA claim including proving that OCWEN's actions were "willful"; and that "[t]he Ninth Circuit agreed that [OCWEN]'s actions were illegal under ORS § 86.010 if [plaintiff] had not abandoned the property."  Pl. Mot. 5 (citation omitted).  Plaintiff asserts that a substantial fee award is therefore necessary "to deter future illegal conduct against homeowners."  *Id.*  OCWEN asserts that it settled the UTPA claim based purely on the economic practicality of the cost of trial.  OCWEN Objs. (Fees) 1-2.  To the extent that it was simply economically practicable to settle rather than take this claim to trial, it is true that plaintiff has not necessarily shown he would have been able to establish willfulness.  Nonetheless, it is also true that plaintiff bore the burden of proof on this issue at trial, and there can ultimately be no

dispute that plaintiff is the prevailing party on the UTPA claim. The Court finds that this factor favors plaintiff.

The second relevant factor is "[t]he objective reasonableness of the claims and defenses asserted by the parties." Or. Rev. Stat. § 20.075(1)(b). With respect to this factor, OCWEN asserts that plaintiff acted unreasonably and asserted unreasonable claims, including by seeking tens of thousands of dollars more in economic damages than ever previously asserted in the case shortly before trial; seeking amounts grossly disproportionate to plaintiff's out-of-pocket cost of $600.00; repeatedly raising the issue of punitive damages, "despite the fact that no evidence showed any intentional misconduct by [OCWEN]" and despite the Court's multiple rulings that plaintiff could not recover punitive damages; and "engag[ing] in a campaign of harassment against [OCWEN]." OCWEN Objs. (Fees) 3-5. In turn, plaintiff asserts that "[m]uch of what [OCWEN] labels unnecessary and unreasonable about [plaintiff]'s litigation tactics might have been handled differently if he had been represented by counsel every step of the way." Pl. Reply Supp. Pl. Mot. ("Pl. Reply"), ECF [367], at 4. However, specifically considering plaintiff's belated increase in economic damages sought and motion to amend to add two new claims, and repeated attempts to re-litigate the issue of punitive damages, all of which occurred during plaintiff's time represented by counsel, the Court finds that this factor favors OCWEN.

The third relevant factor is "[t]he objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings." Or. Rev. Stat. § 20.075(1)(e). Regarding this subsection, plaintiff argues that he "and his attorneys diligently prosecuted the case, yielding a favorable resolution of the UTPA claim"; he "and his attorneys worked very hard to keep this case alive over more than a decade"; and "[h]is lawyers kept contemporaneous records of their time, and in preparing th[e] [fee] [p]etition, [] reviewed their records to correct clerical mistakes, improve descriptions, and delete [] time entries that were unrelated to the UTPA claim or [to] [OCWEN]." Pl. Mot. 5-6. In turn, OCWEN sets forth the same arguments regarding reasonableness as it asserted with respect to the second factor. On the one hand, the Court agrees that plaintiff and his attorneys generally displayed strong diligence in the prosecution of this long and at times convoluted case. On the other hand, the Court also agrees that plaintiff

at times acted unreasonably during this litigation, particularly as discussed already with respect to the second factor. However, because the Court has accounted for this unreasonableness under the second factor, and in light of the unique history of this case, the Court finds that this factor favors plaintiff.

Finally, the Court may consider "[s]uch other factors as [] may [be] appropriate under the circumstances of the case." Or. Rev. Stat. § 20.075(1)(h). Here, the Court notes that access to justice is an important principle at play that, though subsequently considered under ORS § 20.075(2)(i) in determining the *amount* of fees, is not adequately accounted for under ORS § 20.075(1). In an UTPA case, awarding attorney fees "assures that wronged consumers can obtain counsel to prosecute claims that otherwise might be impractical to pursue" based on the ratio of the claim's dollar value to the value of the legal services needed to pursue the claim. *Honeywell*, 310 Or. at 213. The Court finds that this other factor also favors plaintiff.

To summarize, the Court has found that ORS §§ 20.075(1)(a), (e), and (h) favor plaintiff; and (1)(b) favors OCWEN.[3] Based on these findings, and considering the Oregon Supreme Court's

---

[3] The Court finds that factors (1)(c), (d), (f), and (g) are neutral. Subsection (1)(c) considers "[t]he extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases[,]" and (1)(d) considers "[t]he extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses." Or. Rev. Stat. §§ 20.075(1)(c), (d). Neither party sets forth argument regarding these factors, and the Court finds them to be neutral.

Subsection (1)(f) considers "[t]he objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute." Or. Rev. Stat. § 20.075(1)(f). OCWEN sets forth the same argument with respect to this factor as with respect to subsection (1)(e), and additionally provides a "sampling" of the parties' settlement offers outside of mediation, which OCWEN argues shows that plaintiff "consistently sought a settlement amount that was grossly disproportionate to his actual damages[.]" OCWEN Objs. (Fees) 6-7. OCWEN emphasizes that "[e]ven after [it] made an offer of judgment in the full amount of [plaintiff]'s claimed damages, a week before the pretrial conference, [plaintiff] waited nine days to accept it, resulting in [] unnecessary fees and a waste of judicial resources." *Id.* at 7 (emphasis omitted). The Court agrees that the sampling of settlement negotiations does indicate some unreasonableness on plaintiff's part as to amounts sought and conditions placed on settlement. Nonetheless, OCWEN also displayed some unreasonableness throughout settlement negotiations, particularly by failing to account for the significant attorney fees that continued to accrue over time. *See* Pl. Reply 5-6. In this context, it was not *per se* unreasonable for plaintiff to seek amounts "disproportionate" to his actual loss in this case; OCWEN's settlement positioning indicates it consistently ignored the practical reality that UTPA claims often involve "an expenditure of attorney time the value of which greatly exceed[s] the value of the goods or services in question[.]" *Honeywell*, 310 Or. at 213. Ultimately, because both parties were unreasonable as to settlement negotiations, the Court finds this factor to be neutral.

Finally, subsection (1)(g) considers "[t]he amount that the court has awarded as a prevailing party fee under ORS § 20.190." Or. Rev. Stat. § 20.075(1)(g). The Court has not awarded a prevailing party fee under ORS § 20.190 and therefore deems this factor to be neutral.

guidance in *Executive Management Corporation v. Juckett*, the Court here concludes that plaintiff, as the prevailing party on the UTPA claim, is entitled to a reasonable fee award. *See* 274 Or. at 519.

        b.      Amount of Fees

Plaintiff seeks to recover fees for Hernandez, Walsh, and Del Carlo, as well as two legal staff members, Swan and Johnson. Plaintiff requests a total fee amount of $620,725.00, consisting of a lodestar amount of $310,362.50, doubled by a 2x multiplier. Plaintiff argues that this amount is reasonable under the relevant ORS § 20.075 factors, which plaintiff asserts are §§ 20.075(1)(a), (e), and (f), and (2)(a), (c), (d), (e), (f), (g), (h), and (i). OCWEN argues that plaintiff's requested fees are not reasonable under the relevant ORS § 20.075 factors, which OCWEN asserts are §§ 20.075(1)(a), (e), and (f); and objects to the attorneys' proposed hourly rates, various specific fee line items, and the imposition of a multiplier.

        *i.*      *Calculation of Lodestar*

        (1)      Hourly Rates

To determine a reasonable hourly rate, courts consider "[t]he fee customarily charged in the locality for similar legal services" and "[t]he experience, reputation and ability of the attorney performing the services." Or. Rev. Stat. §§ 20.075(2)(c), (g); *see Rust-Oleum Corp.*, 2025 WL 1982291, at *4. "The prevailing market rate in the community is indicative of a reasonable hourly rate." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262-63 (9th Cir. 1987) (footnote omitted) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[T]he relevant community is the forum in which the district court sits." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (internal quotation marks and citation omitted). Courts in this district have the benefit of the periodically revised Oregon State Bar ("OSB") Economic Survey (the "Survey"), which contains data on attorney billing rates based on several factors. *See* Or. State Bar, *Oregon State Bar 2017 Economic Survey – Report of Findings* ("2017 OSB Economic Survey") (2018), https://www.osbar.org/_docs/resources/econsurveys/17economicsurvey.pdf; Or. State Bar, *Oregon State Bar 2022 Economic Survey – Report of Findings* ("2022 OSB Economic Survey") (2023), https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf.

The Survey is "an initial benchmark for determining the reasonableness of a party's

requested rates." *Rust-Oleum Corp.*, 2025 WL 1982291, at \*4 (citation omitted). However, "[a]ttorneys may argue for higher rates based on inflation, specialty, or any number of other factors." *Edwards v. Cincinnati*, No. 3:19-cv-01425-BR, 2021 WL 6427817, at \*11 (D. Or. Feb. 8, 2021). Additionally, attorneys may introduce other relevant evidence of the prevailing market rate in the community, such as affidavits "regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the" plaintiff's attorneys. *Foraker v. USAA Cas. Ins. Co.*, No. 3:14-cv-87-SI, 2018 WL 3873575, at \*4 (D. Or. Aug. 15, 2018) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). Factors that may warrant a higher hourly rate include whether the case involved a contingency fee agreement, *see Tanner v. Or. Health & Scis. Univ.*, 161 Or. App. 129, 134-35, 980 P.2d 186 (1999), whether the case was "complex, controversial, and high risk," *Griffin v. Tri-Cnty. Metro. Transp. Dist.*, 112 Or. App. 575, 584-85, 831 P.2d 42 (1992), *aff'd in part and rev'd in part on other grounds*, 318 Or. 500, 870 P.2d 808 (1994), and "the results obtained," *Lunceford*, 2024 WL 1193047, at \*3 (citing *Perdue*, 559 U.S. at 553-54; *Gonzalez*, 729 F.3d at 1205).

      **Hernandez and Walsh.** Plaintiff requests an hourly rate of $450.00 for both Hernandez and Walsh, which plaintiff asserts is reasonable based on the 2017 and 2022 OSB Economic Surveys[4] and given their background, skills, and experience. OCWEN argues this rate is unreasonable as to both attorneys because (1) they both had a fee agreement with plaintiff that entitled them to compensation at an hourly rate of $250.00 in the event of termination or withdrawal, and here, Hernandez withdrew, and plaintiff terminated Walsh; (2) plaintiff bases the requested rate on the "Business/Corporate—Litigation" category of the OSB Economic Survey, whereas it should instead be based on the "Civil Litigation— Plaintiff" category; (3) Hernandez's experience does not support the requested rate; and (4) the requested rate relates to the Portland market, while Hernandez's firm is located in Bandon, Oregon, and Walsh's firm was located in Bly, Oregon, and then later in Grangeville, Idaho, all of which are lower-rate geographic

---

[4] The 2017 OSB Economic Survey covered most of Hernandez and Walsh's time on this case, including from the date of its filing in 2014 until 2018. The 2022 OSB Economic Survey covered Hernandez and Walsh's time on this case in 2018.

markets.

        As a preliminary matter, the Court rejects OCWEN's assertion that the Court may only award Hernandez and Walsh fees at or below the rates referenced in their fee agreements with plaintiff. As plaintiff notes, the cases cited by OCWEN on this point address attorney fee awards made under authorities other than ORS § 20.075.[5] Under ORS § 20.075, courts gauge the reasonableness of an attorney's rate by examining the prevailing market rate in the community; this inquiry is not so narrowly limited as OCWEN asserts. The Court is also largely unpersuaded by OCWEN's geographic argument. Though neither Hernandez & Associates nor Walsh PLCC are located in or around the Portland area, the Court's inquiry is the forum in which the court sits, not the forum in which the firm is located. Ultimately, the Court finds it appropriate to use the general "Oregon" category, rather than either the specific "Downtown Portland" or "Southern Oregon" categories suggested by plaintiff and OCWEN, respectively. Ultimately, the Court

---

[5] First, plaintiff cites *Associated Oregon Veterans v. Department of Veterans' Affairs*, 308 Or. 476, 782 P.2d 418 (1989) (per curiam). In *Associated Oregon Veterans*, an action for declaratory and injunctive relief, several plaintiffs "s[ought] a determination of their rights under their farm and home loan agreements with [the] defendant[.]" *Id.* at 478. The circuit court granted summary judgment in the defendant's favor and awarded the defendant fees under the terms of the parties' loan agreements. *See id.* The plaintiffs appealed. *Id.* On appeal, the Ninth Circuit affirmed the circuit court's ruling, finding that the defendant was only entitled to a fee award based on the contracts between the parties, but also modified the amount of the award, reasoning that the amount awarded by the circuit court was "unreasonable because it exceeded th[e] [amount]" that the attorney "actually billed" their client and because a party "is not entitled to more than it spent on attorney fees." *Id.* at 480-81. Here, plaintiff seeks to recover fees under ORS § 20.075, not under some contractual agreement between the parties. *See Strunk v. Pub. Emps. Ret. Bd.*, 343 Or. 226, 242, 169 P.3d 1242 (2007) (en banc) (reasoning that the objecting party's "reliance on *Associated Oregon Veterans* would, perhaps, be more effective if the right to fees at issue here derived—as it did in *Associated Oregon Veterans*— from a contract; that, however, is not the case"). Furthermore, even if the fee agreements between plaintiff Hernandez and Walsh allowed the attorneys to recover fees at a lower hourly rate under circumstances which indeed occurred, there is ultimately no evidence that plaintiff spent any specific amount on fees or that plaintiff, Hernandez, and Walsh ever treated their fee agreements as anything other than contingency fee agreements. *See* Hernandez Decl. ¶ 2; Walsh Decl. ¶ 2 (indicating receipt of initial retainer and stating that Walsh PLCC "has not been paid any attorney fees as a result of this lawsuit").

Plaintiff also cites *Watts v. Lane County*, 142 Or. App. 489, 922 P.2d 686 (1996). In *Watts*, the plaintiff sued Lane County for battery and false imprisonment. *Id.* at 491. The circuit court found for the county and, in a supplemental judgment, awarded the county $3,500.00 under Oregon Rule of Civil Procedure ("ORCP") 46 C "for the expense of establishing the truth of the matters for which the county had sought pretrial admissions." *Id.* ORCP 46 C allows, "[i]n appropriate cases, a party that prevails at trial after the opposing party denied its requests for admission[,] [to] recover its trial expenses, including attorney fees[.]" *Id.* at 493. The plaintiff appealed, and the Oregon Court of Appeals affirmed, but reduced the amount of the award in the supplemental judgment. *Id.* In reducing the amount, the court of appeals noted that "an award of attorney fees [] cannot be based on an hourly rate that exceeds [] the hourly cost of the services provided[], even if [the higher rate] would be a reasonable rate for the services rendered in defending th[e] case[,]" because "a party may not obtain an attorney fee award under ORCP 46 C greater than the amount of attorney fees incurred[.]" *Id.* at 495 (citing *Associated Or. Veterans*, 308 Or. at 481). The same reasoning described above with regard to *Associated Oregon Veterans* is also applicable with regard to *Watts*.

deems the appropriate private practice category to be "Civil Litigation—Plaintiff," as opposed to "Business/Corporate—Litigation," and finds the category based on years admitted to practice to be relevant.

Hernandez became a member of the OSB in 1987 and practiced from that time on. He aided plaintiff in initiating this action in 2014 and remained an attorney of record until withdrawing in mid-2018, shortly before his suspension. Decl. Manuel Hernandez ("Hernandez Decl."), ECF [357], ¶ 2. His firm, Hernandez & Associates, "represents personal injury victims and engages in probate, estate planning, and criminal defense work." *Id.* Hernandez's years of experience and longstanding professional relationship with plaintiff, and the contingency factor, all weigh in favor of a higher hourly rate. *See* Or. Rev. Stat. §§ 20.075(2)(f), (h). However, the overall results obtained (prevailing on one claim out of many, and against one defendant out of many) and professional reputation factors weigh in favor of a slightly lowered hourly rate. *See* Or. Rev. Stat. § 20.075(2)(d). Ultimately, the Court finds a reasonable hourly rate for Hernandez to be $350.00. This corresponds with the 75th percentile rates both for attorneys practicing between twenty-one and thirty years and for Oregon private practitioners in the "Civil Litigation—Plaintiff" category. *See* 2017 OSB Economic Survey 39, 41.

Walsh has been a practicing attorney since 2008 and a member of the OSB since 2013. Decl. Bonner Walsh ("Walsh Decl."), ECF [359], ¶ 2. His firm, Walsh PLCC, "represents individuals, debtors, and in consumer protection cases litigated in . . . Oregon." *Id.* Walsh has consumer class action experience; is admitted to practice in the states of Idaho, Oregon, Washington, and Texas; and is admitted to practice in multiple federal district and appellate courts. *Id.* Walsh has provided a list of cases since 2017 in which he "sought and was approved for [his] hourly rates of $600.00 to $700.00." *Id.* ¶ 7. Though Walsh has fewer years of practice experience than Hernandez, he has significantly more experience in consumer law and, by all appearances, a strong professional reputation. Additionally, the contingency factor weighs in favor of a higher hourly rate for Walsh. *See* Or. Rev. Stat. § 20.075(2)(h). Ultimately, the Court finds a reasonable hourly rate for Walsh to be $400.00. This rate is at the high end for attorneys of Walsh's level of experience at the time the services were rendered, *see* 2017 OSB Economic Survey 39 (indicating a 95th percentile rate of $390.00 for attorneys practicing between seven and nine years), and

falls within the 75th and 95th percentile rates for Oregon private practitioners in the "Civil Litigation—Plaintiff" category, *see id.* at 41 (indicating a 75th percentile rate of $350.00 and a 95th percentile rate of $475.00).

    **Del Carlo.**  Plaintiff requests an hourly rate of $650.00 for Del Carlo.  OCWEN objects to this rate on several bases.  OCWEN argues that although Del Carlo does not disclose her normal rate, "given her practice, it seems likely that her regular billing rate is substantially lower than $650/hour[,]" and "based on the clear nature of this litigation and [Del Carlo's] client, the lower rates in the 'Civil Litigation-Plaintiff' category" of the OSB Economic Survey "are more appropriate" than the higher rates in the "Business/Corporate Litigation" category.  *Id.* at 8-9.  OCWEN asserts that "while [Del Carlo] has significant experience in foreclosure defense, [she] candidly admitted that she has no federal trial experience[,]" and notes that Del Carlo billed her requested rate of $650.00 for many tasks that are generally more appropriately delegated to associates who bill at lower hourly rates.  *Id.* at 9.  OCWEN further asserts that while the Court begins its inquiry with the relevant survey, the Court then considers other factors, which together here indicate that a lower rate is appropriate.  For these reasons, OCWEN asserts that the appropriate billing rate for Del Carlo is $425.00 per hour, which is "slightly above the mean rate in the 'Civil Litigation-Plaintiff' category."  *Id.* (citing Decl. Hope Del Carlo ("Del Carlo Decl."), ECF [358], Ex. B, at 2).

    Del Carlo began practicing in 2000 and is now a solo practitioner in Portland.  Del Carlo Decl. ¶ 2.  Her firm, Elemental Law LLC, "focuses on representing homeowners and consumer mortgage borrowers in Oregon."  *Id.*  Del Carlo has extensive experience in foreclosure defense and has specialized in consumer law and consumer mortgage litigation throughout her career.  *Id.* ¶¶ 4-5.  As such, she is "recognized as one of the state's experts in representing mortgage borrowers in foreclosure defense and affirmative claims against lenders, servicers, and mortgage brokers[,]" and "regularly organize[s] and train[s] at continuing legal education seminars on . . . consumer law topics."  *Id.* ¶¶ 4; *see* Decl. of Matthew S. Kirkpatrick Supp. Pl. Mot., ECF [368], ¶¶ 8, 10.  Del Carlo candidly informed the Court that this is her firm's second fee petition and that she generally lacks federal trial court experience.  Here, Del Carlo's years

of experience practicing law, specialization in consumer law, and superior reputation in the community support a high hourly rate. Del Carlo's contingency fee agreement with plaintiff is also noteworthy. *See* Or. Rev. Stat. § 20.075(2)(h).

In addition, although the results obtained were not a significant factor as to Hernandez and Walsh, it is noteworthy that Del Carlo entered this case with only the UTPA claim remaining and obtained a settlement for the maximum amount of damages that plaintiff could have recovered at trial. *See* Or. Rev. Stat. § 20.075(2)(d). Furthermore, Del Carlo's acceptance of representation in the instant case was a short time prior to the scheduled trial, which necessarily required her to devote much time getting up-to-speed on a case with a lengthy factual and procedural history and prepare for a trial in relatively short order. *See* Or. Rev. Stat. § 20.075(2)(e). From these facts the Court can assume that there was a reasonable likelihood that acceptance of the work would preclude her from taking other cases, at least in the immediate. *See* Or. Rev. Stat. § 20.075(2)(b). Finally, to achieve settlement at all in this contentious and labored case is a worthy feat. Thus, despite Del Carlo's general lack of experience litigating in federal court, the Court finds that the relevant factors support a rate well above the median. Upon review of the appropriate Survey,[6] the Court finds that an hourly rate of $600.00 is reasonable. This rate falls within the mean and 95th percentile rates for both relevant categories: years of practice (for Downtown Portland attorneys with twenty-one to thirty years of practice experience, the mean rate is $447.00 and the 95th percentile rate is $697.00); and area of private practice (for Downtown Portland attorneys practicing plaintiff's side civil litigation, the mean rate is $419.00 and the 95th percentile rate is $685.00).

**Swan and Johnson.** Plaintiff requests an hourly rate of $100.00 for Swan and $150.00 for Johnson. OCWEN does not object to either proposed rate. Even where no objection is made, however, courts have "an independent duty to review a motion for attorneys' fees for reasonableness." *Edwards*, 2021 WL 6427817, at *11. When "assessing claims for paralegal fees, courts within this [d]istrict have noted that a reasonable hourly rate for a paralegal should not exceed that of a first year associate."

---

[6] All of Del Carlo's time on this case falls under the 2022 OSB Economic Survey.

*Lunceford*, 2024 WL 1193047, at *5 (internal quotation marks and citation omitted).  Additionally, when crafting a reasonable rate, courts "'look closely at the educational and occupational background of the paralegal in question[,]'" and utilize the National Utilization & Compensation Study by the National Association of Legal Assistants ("NALA").  *Id.* (quoting *Smeenk*, 2019 WL 3325962, at *2).

At the time Swan worked on this case, she "was highly skilled and experienced, as she had been [Hernandez's] legal assistant for approximately [seventeen] years when the case began."  Hernandez Decl. ¶ 3.  Under the applicable Survey, the mean hourly rate for an attorney in Oregon with zero to three years of experience in private practice was $210.00, 2017 OSB Economic Survey 38; and according to the cited NALA survey, the average hourly billing rate for paralegals in 2020 was $140.00, Del Carlo Decl. ¶ 9 & Ex. C.  Though Swan is a legal assistant, not a paralegal, and her work on this case was completed between 2014 and 2018, which precedes the amounts identified in the NALA survey, the Court nonetheless finds the proposed hourly rate of $100.00 to be reasonable considering her years of experience and the fact that this proposed rate falls below both the average rate of a first-year associate and the average rate for paralegals provided for in the relevant surveys.

Johnson has graduate degrees, provides Elemental Law LLC with administrative support, and does work for Elemental Law LLC in data analysis, project management, document drafting and editing, and client relations.  Del Carlo Decl. ¶ 9.  Under the applicable Survey, the mean hourly rate for an attorney in Downtown Portland with zero to three years of experience in private practice is $310.00, 2022 OSB Economic Survey 42; and again, the average hourly rate for paralegals in 2020 was $140.00, Del Carlo Decl. ¶ 9 & Ex. C.  Similarly to Swan, there is no indication that Johnson is a paralegal or has paralegal certification or training.  Nonetheless, based on Johnson's significant professional experience, the Court finds that the requested rate of $150.00 is reasonable.  This rate falls well below the average rate of a first-year associate, and because Johnson began his work on this case in 2024, the Court finds that a $10.00 upward departure from the 2020 average hourly paralegal rate, considering inflation, is reasonable.

(2)     Hours Worked

Under ORS § 20.075(2)(a), courts consider "[t]he time and labor required in the

proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services."  These consolidated cases span a more-than-ten-year period and involved multiple claims and defendants, significant discovery and motions practice, and an appeal to the Ninth Circuit.  Plaintiff's ultimately successful claim, the UTPA claim, required an understanding of a technical and specialized area of consumer law.  Courts also analyze under this factor "the reasonableness of the number of hours expended by counsel for the prevailing party."  *Hosp. Mgmt.*, 2023 WL 5042513, at *3 (internal quotation marks and citation omitted).  Ultimately, the party seeking fees bears the burden of proving that the claimed compensation is for fees on successful claims, as well as for documenting the hours devoted to litigation.  *E.g.*, *MW Builders, Inc. v. Safeco Ins. Co. v. America*, No. CV 02-1567-AC, 2010 WL 11655445, at *2-3 (D. Or. Apr. 30, 2010) (citations omitted).

Under Oregon law, "attorney fees are recoverable only for those fees reasonably incurred in the pursuit of (1) successful claims (2) for which fee recovery is authorized."  *Clausen v. M/V NEW CARISSA*, 171 F. Supp. 2d 1138, 1142 (D. Or. Oct. 15, 2001) (citing *Skaggs v. Hendgen*, 127 Or. App. 659, 664, 874 P.2d 93 (1994)).  Thus, "'[w]hen a party prevails on an action that encompasses both a claim for which attorney fees are authorized and a claim for which they are not, the trial court must apportion the fees incurred for each claim, except when there are issues common to both claims.'"  *Lunceford*, 2024 WL 1193047, at *4 (quoting *Bennett v. Baugh*, 164 Or. App. 243, 247, 990 P.2d 917 (1999)); *see Moro v. State of Oregon*, 360 Or. 467, 487, 384 P.3d 504 (2016) (internal quotation marks and citation omitted) ("[W]hen the successful and unsuccessful claims involve a common core of facts or are based on related legal theories, then attorney fees incurred in the presentation of unsuccessful claims are recoverable on the theory that they contributed to the plaintiff's ultimate success.").  The reasoning for the "common issues" exception is that a "'court might conclude that it would have taken roughly the same amount of time to litigate a case in which the successful claim was the sole claim as it took to litigate the case in which it was one among several claims'"; in that case, "'it would not be necessary to apportion the fees to reflect the lack of success on the other claims.'"  *Clausen*, 171 F. Supp. 2d at 1142 (quoting *Freeland v. Trebes*, 162 Or. App. 374, 378-79, 986 P.2d 630 (1999)); *see Accident Care Specialists of Portand, Inc. v. Allstate Fire & Cas. Ins.*

*Co.*, No. 3:11-cv-01033-MO *et al*, 2014 WL 2747632, at *7 (D. Or. June 16, 2014).

A "court may determine, in one of two ways, whether hours are excessive, redundant, or otherwise unnecessary, and thus excludable." *Lunceford*, 2024 WL 1193047, at *3. It may either (1) "conduct an hour-by-hour analysis of the fee request[,]" or (2) "'when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure.'" *Id.* (quoting *Gonzalez*, 729 F.3d at 1202). If a court chooses to make a percentage cut, "'it must set forth a concise but clear explanation of its reasons for choosing a given percentage reduction.'" *Id.* (internal quotation marks omitted) (quoting *Gonzalez*, 729 F.3d at 1202). When considering whether a reduction of hours is appropriate, courts may examine, for example, whether the requested fees include charges for clerical tasks, *see id.* at *6; whether there are vague time or block-billed time entries, *see Accident Care Specialists of Portand*, 2014 WL 2747632, at *9; or whether "it should [] have been difficult for [a party's] attorneys to establish that [a] claim lacked a proper legal foundation" and, as a result, whether they "required that [the opposing party] perform work on [a] claim that otherwise would have been unnecessary." *Allen v. Delrich Props., Inc.*, No. 05-462 JE, 2006 WL 1050536, at *3 (D. Or. Mar. 30, 2006) (citing *Fadel v. El-Tobgy*, 245 Or. App. 696, 709-10, 264 P.3d 150 (2011)).

Upon review of the parties' filings, there can be no doubt that all three firms seek unreasonable fees, as described below.

**Unrelated Claims and Parties.** OCWEN objects to many of all three attorneys' hours billed as unrelated to the UTPA claim or to OCWEN. Plaintiff argues that his attorneys "have already made an effort to reduce their time to only those hours that supported [plaintiff's] ultimate victory"; "[i]t is impossible to fully separate the UTPA-related time from all other time worked on the case because the precise purpose of every piece of legal work is so inextricable from the totality of the case"; and "[t]his broad base of work is what allowed [plaintiff] to survive the [Ninth] Circuit appeal and the final few years of the case, even without attorneys, so that he was left with something to take to trial in 2024." Pl. Reply 7-8.

The Court disagrees with plaintiff's assertion that all the charges objected to by OCWEN

are "inextricably intertwined" with the UTPA claim. First, all three attorneys' fee charges include vague or block-billed entries for which the Court cannot discern what was reasonably related to the UTPA claim or OCWEN and what was not. The Court has reviewed OCWEN's objections on this issue and agrees with its identifications of vague and block-billed entries, which OCWEN has highlighted in blue. *See* Decl. Marie Eckert ("Eckert Decl."), ECF [365], Exs. 9-11. However, a wholesale exclusion of these hours is not appropriate. The Court is within its discretion to instead impose a percentage reduction of these hours, particularly where "there is insufficient detail to allow [the] eliminat[ion] [of] entries with specificity" and where there are common issues of fact or law between the claims or parties that make the reduction of fees more appropriate than wholesale exclusion. *See Accident Care Specialists of Portland*, 2014 WL 2747632, at *9. Here, there is insufficient detail to allow the Court to adequately discern what portions of the vague and block-billed entries are reasonably related to the UTPA claim or OCWEN and what portions are not, and there are common issues of fact or law that make a percentage reduction appropriate. Because the UTPA claim was one of nine claims asserted by plaintiff,[7] the Court deems a percentage reduction of eighty-nine percent, or approximately eight-ninths, to be appropriate. Imposing this reduction, the vague or block billed entries identified by OCWEN are reduced as follows: 35.8 hours of Hernandez's time is reduced by 31.86[8] hours; 57.2 hours of Walsh's time is reduced by 50.91 hours; and 0.6 hours of Del Carlo's time is reduced by 0.53 hours.[9]

       Second, all three attorneys and Johnson charge for fees related to claims on which or parties against whom plaintiff did not prevail. Though all plaintiff's claims involved a common core of facts, the

---

[7] This number includes plaintiff's claims for (1) trespass; (2) conversion; (3) unlawful trade practices; (4) negligence; (5) negligent hiring, training, or supervision; (6) intrusion upon seclusion; (7) IIED; (8) wrongful foreclosure; and (9) punitive damages.

[8] For each number calculated, the Court rounds to the nearest one-hundredth. (*E.g.* For Walsh, the calculation is 57.2 hours multiplied by 0.89% equals 50.908, and the Court therefore rounds to 50.91 hours.)

[9] For clarity, these numbers encompass all entries highlighted either fully or partially in blue in OCWEN's charts of objections. *See* Eckert Decl. Exs. 9, 10, 11. This includes several entries highlighted in both blue and another color, *see, e.g.*, *id.* at Ex. 9 at 1 (entry on 4/24/2014), for which it is not clear whether OCWEN has double counted when making its reductions. The Court here notes that it has only reduced these entries once, for vagueness. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1115-16 (9th Cir. 2008) ("double counting is impermissible").

Court is unconvinced that this case "would have taken roughly the same amount of time to litigate" had only the UTPA claim initially been asserted, *Clausen*, 171 F. Supp. 2d at 1142 (internal quotation marks and citation omitted), or that all of the charges relating solely to failed claims or issues necessarily "contributed to the plaintiff's ultimate success," *Moro*, 360 Or. at 487. Therefore, the Court again reduces hours charged for tasks related to non-UTPA, non-OCWEN, and generally unsuccessful claims, by eighty-nine percent. Again, this percentage is more appropriate than a wholesale exclusion, to account for the existence of common factual and legal issues and the role that some claims and parties played in plaintiff's ultimate success. Pertinent entries are thus reduced as follows: 71.7 hours of Hernandez's time is reduced by 63.81 hours; 142.4 hours of Walsh's time is reduced by 126.74 hours; 38.4 hours of Del Carlo's time is reduced by 34.18 hours; and 2.1 hours of Johnson's time is reduced by 1.87 hours.[10]

**Excessive Time.** OCWEN objects to certain charges as excessive and asserts that the Court should reduce these charges by fifty percent. Specifically, OCWEN asserts that some tasks took too long; that reduction of some charges is warranted based on plaintiff's unreasonableness in the litigation; and that some charges are duplicative. Plaintiff argues that, in preparing the fee petition, his attorneys have already made "a good faith effort to exclude [] hours that are excessive, redundant, or otherwise unnecessary." Pl. Reply 7. Upon examination, the Court finds that all but a few of OCWEN's objections regarding excessiveness are without merit. The Court declines to reduce any charges based on the length of time spent on a given task. Considering the context of the case, the hours expended on the tasks in question

---

[10] Due to the voluminous nature of the parties' submissions, the Court does not cite to and explain each specific instance of unrelated charges. However, a few examples are illustrative: Walsh charges for work completed on the adjacent state foreclosure case. Hernandez and Walsh both charge for work completed on a motion to dismiss that did not address plaintiff's UTPA claim and related to discovery taken from parties other than OCWEN. All three firms charge extensively for work completed on the issue of punitive damages, on which the Court ruled against plaintiff on multiple occasions. Though it may have been reasonable to initially pursue punitive damages with zeal, this reasonableness dwindled with each subsequent decision made by the Court on this issue. All such charges are appropriately reduced, and the Court again notes that it has only reduced double-highlighted entries once.

The Court also notes that it includes in this calculation certain objections to (1) Del Carlo's time that were coded gray, rather than yellow or green, but which refer to failed claims or issues, *see id.* at Ex. 10, at 4-7 (coding gray: work completed regarding punitive damages; a demonstrative exhibit that the Court decisively ruled inadmissible; and a subpoena the Court quashed); and (2) Johnson's time that were coded as "admin" rather than "non-relevant or failed claims or parties[,]" *see id.* at Ex. 10, at 12 (coding as "travel time" work on the failed punitive damages claim and on a demonstrative exhibit that the Court decisively ruled to be inadmissible).

were not unreasonable.  Furthermore, the Court declines to reduce any hours based on plaintiff's unreasonableness during litigation, as this factor has already been considered by the Court.

However, the Court agrees with OCWEN's objections regarding duplicative time.  While "[a] party is certainly free to hire and pay as many lawyers at it wishes, [they] cannot expect to shift the cost of any redundancies to [their] opponent."  *Muller*, 2017 WL 6209701, at *5 (internal quotation marks and citation omitted).  As such, "'when attorneys hold a telephone or personal conference, good billing judgment mandates that only one attorney should bill that conference to the client, not both attorneys.'"  *Id.* (quoting *Precision Seed Cleaners*, 976 F. Supp. 2d at 1252; and citing *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007)).  Therefore, the Court here reduces duplicative charges by fifty percent, which is reasonable based on the nature of the duplication (*i.e.*, primarily, where a second attorney reviewed or revised the work of a first).  This, in turn, reduces plaintiff's attorneys' total hours by the following amounts: Hernandez's, by two hours; Del Carlo's, by 2.7 hours; and Johnson's, by 3.7 hours.[11]

**Improper Charges.**  OCWEN objects to certain charges it argues are administrative, including charges for clerical tasks such as formatting, filing, and docketing; travel time related to the preparation of an inadmissible demonstrative exhibit; and charges for consulting with other counsel regarding tax implications.  Plaintiff asserts that all the challenged charges are reasonable.

"'Tasks which are clerical in nature are not properly billed as attorney fees but are overhead expenses absorbed by counsel.'"  *Id.* at *6.  Clerical tasks "include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents."  *Id.* (internal quotation marks and citation omitted).  All three firms charge for unrecoverable clerical tasks.  Upon review, the Court adopts OCWEN's proposed objections and reduces the recoverable hours for these charges as follows: Hernandez's, by 8.1 hours; Swan's, by 42.85 hours; Walsh's, by 3.5 hours; Del Carlo,

---

[11] *See* Eckert Decl. Ex. 10, at 3-4 (Hernandez); Ex. 11, at 9-10 (Del Carlo), 11 (Johnson).  The Court does not include Johnson's time entries for travel that OCWEN objects to as duplicative; these charges are better encompassed within the Court's discussion of travel charges, *infra*.

by 3.3 hours; and Johnson, by 24.7 hours.[12]

Likewise, OCWEN's objection regarding improper travel fees is well taken. Reasonable travel time is recoverable. *Rust-Oleum Corp.*, 2025 WL 1982291, at *7. However, the challenged travel charges related to the creation of a demonstrative exhibit showing the property at issue more than a decade after the events underlying this action occurred, and the Court decisively ruled the demonstrative exhibit to be inadmissible. The Court finds that these charges, amounting to 24.1 of Del Carlo's total hours and twenty of Johnson's total hours,[13] are not reasonable, and therefore deducts them.

Finally, the Court agrees that charges for consulting other attorneys regarding the tax implications of settlement are, at least in this case, not reasonable. Neither party cites case law addressing this issue, but the burden is on plaintiff to prove reasonableness. Here, while it is certainly sensible that plaintiff would seek inquiry about potential tax implications, it is not reasonable for OCWEN to foot this bill. The offer of judgment was for the total damages plaintiff could obtain at trial on the sole remaining claim; no matter the tax implication of the offer, plaintiff could not have received a better outcome with what remained, and consulting other attorneys was not necessary to come to this realization. The Court therefore deducts these charges, which total 1.5 of Del Carlo's total hours. *See* Eckert Decl. Ex. 11 at 9.

Based on all these findings, the Court concludes that the presumptive lodestar amount is $113,531.50. This number consists of $11,628.00 to Hernandez & Associates; $30,940.00 to Walsh PLCC; and $70,963.50 to Elemental Law LLC.[14]

---

[12] These calculations are largely consistent with OCWEN's highlighted objections, though the Court notes that there may be slight discrepancies between the totals based on the Court's effort to ensure no reductions are duplicated, and that it has not included Johnson's highlighted entries on 10/1/2024, for 0.9 hours, and on 10/4/2024, for 3.4 hours, as these charges relate to Johnson's preparation of the instant fee petition and are reasonable and recoverable. *See, e.g.*, *Tri-Cnty. Metro. Transp. Dist. of Or. v. Aizawa*, 277 Or. App. 504, 511, 371 P.3d 1250 (2016) (noting that it is permissible for courts to award "fees on fees," meaning that fees may be recoverable for time spent seeking a fee award).

[13] *See* Eckert Decl. Ex. 11 at 3, 5-6.

[14] For Hernandez & Associates, this consists of $11,438.00 for Hernandez's reasonable fees and $190.00 for Swan's reasonable fees. Hernandez's fee calculation can be summarized as follows: 138.45 (total hours for which fees are sought) minus 31.86 (vague/block billing) minus 63.81 (unrelated/unsuccessful claims/parties) minus 2 (duplicative) minus 8.1 (clerical) equals 32.68 hours, multiplied by the reasonable hourly rate of $350.00 equals $11,438.00. Swan's fee calculation can be summarized as follows: 44.75 (total hours for which fees are sought) minus 42.85 (clerical)

27

ii.    *Multiplier*

Despite the "strong presumption" that the lodestar total is a reasonable fee, *Lunceford*, 2024 WL 1193047, at *4 (citing *Perdue*, 559 U.S. at 552), courts may adjust the lodestar total based on the remaining ORS § 20.075(2) factors and "when [] supported by the facts and circumstances of the case[,]" *Muller*, 2017 WL 6209701, at *10 (citation omitted).  One such adjustment is a "multiplier," which may be deemed appropriate based on a variety of factors, including, in relevant part, whether the attorney's fee was contingent, and the level of risk involved in the case.  *See, e.g.*, *Strawn*, 233 Or. App. at 416; *Dockins v. State Farm Ins. Co.*, 330 Or. 1, 997 P.2d 859 (2000); *Strunk*, 343 Or. at 246-47; *Wattenbarger v. Boise Cascade Corp.*, 301 Or. 12, 16, 717 P.2d 1175 (1986).

Based on the Court's reasoning in this Opinion and Order, the Court concludes that plaintiff is not entitled to a 2x multiplier.  Citing primarily ORS §§ 20.075(2)(f), (h), and (i), plaintiff asserts that a 2x multiplier is appropriate because: his attorneys took this case on contingency; he has "enduring relationship[s] with his attorneys"; and the "new access to justice standards for assessing attorney fees" indicate that payment of fees is necessary to ensure consumers can find lawyers to help them in cases like these.  As an initial matter, plaintiff's arguments regarding subsection (f) are not persuasive.  Though plaintiff appears to have had a lengthy professional relationship with Hernandez, Hernandez withdrew from representing plaintiff in this case after his temporary suspension and did not resume his representation upon the conclusion of that suspension.  Plaintiff terminated Walsh's representation for an unknown reason, and

---

equals 1.9 hours, multiplied by the reasonable hourly rate of $100.00 equals $190.00.

For Walsh PLCC, this consists of $30,940.00 for Walsh's reasonable fees.  This fee calculation can be summarized as follows: 258.5 (total hours for which fees are sought) minus 50.91 (vague/block billing) minus 126.74 (unrelated/unsuccessful claims/parties) minus 3.5 (clerical) equals 77.35 hours, multiplied by the reasonable hourly rate of $400.00 equals $30,940.00.

For Elemental Law LLC, this consists of $67,854.00 for Del Carlo's reasonable fees; and $3,109.50 for Johnson's reasonable fees.  Del Carlo's fee calculation can be summarized as follows: 179.4 (total hours for which fees are sought) minus 0.53 (vague/block billing) minus 34.18 (unrelated/unsuccessful claims/parties) minus 2.7 (duplication) minus 3.3 (clerical) minus 24.1 (improper travel) minus 1.5 (tax and other attorney consultations) equals 113.09 hours, multiplied by the reasonable hourly rate of $600.00 equals $67,854.00.  Johnson's fee calculation can be summarized as follows: 71 (total hours for which fees are sought) minus 1.87 (unrelated/unsuccessful claims/parties) minus 3.7 (duplication) minus 24.7 (clerical) minus 20 (improper travel) equals 20.73 hours, multiplied by the reasonable hourly rate of $150.00 equals $3,109.50.

that representation also did not at any point resume. Finally, plaintiff hired Del Carlo relatively shortly before trial was set to occur in this case. These facts do not warrant a multiplier.

Plaintiff's strongest arguments center on factors (h) and (i). Under ORS § 20.075(2)(h), courts consider "[w]hether the fee of the attorney is fixed or contingent." As noted, there is no dispute that Hernandez, Walsh, and Del Carlo's fee agreements involved representation on a contingency fee basis; however, OCWEN does dispute that Hernandez and Walsh's fees were *solely* based on contingency, as their fee agreements also purportedly provided for an agreed-upon hourly rate to be applied under certain circumstances. Nonetheless, as already noted, there is no indication that either Hernandez or Walsh were ever paid according to the agreed-upon hourly rate. Additionally, considering the length of time between their withdrawal or termination and the issuance of this Opinion and Order, the risk of the delay of non-payment was actualized. Under ORS § 20.075(2)(i), the Court considers "[w]hether the attorney performed the services on a pro bono basis or the award of attorney fees otherwise promotes access to justice." None of plaintiff's attorneys took this case on a *pro bono* basis. However, there is a strong argument that an award of attorney fees here would promote access to justice. To be clear, many consumer law claims— like UTPA claims—necessarily involve small dollar amounts that make any litigation, let alone lengthy litigation, inaccessible for consumers and impractical for attorneys to pursue. The UTPA is a consumer justice statute, and an award of fees in this case would promote access to justice for consumers and litigants seeking to obtain counsel in cases where the attorney fees may eclipse the dollar value of the economic damages at issue. The Court therefore finds that this factor weighs heavily in plaintiff's favor.

Despite plaintiff's points, the Court is not persuaded that a multiplier is appropriate in this case. While it is true that a plaintiff is not required to obtain "exceptional success" for a multiplier to be warranted, it is nonetheless notable that this action involves a single plaintiff who ultimately prevailed against one defendant on one claim, on which he was limited to recovery of economic damages and an award of fees and costs. This is not a class action, and the offer of judgment was not for the substantial amounts of money often seen in cases involving exceptional success. Furthermore, this action, while at times procedurally convoluted, was not particularly novel or complex in terms of the claims asserted or

types of damages sought.  It is certainly impressive that plaintiff sustained the case for more than a decade and while self-represented for many years, and that he prevailed on the UTPA claim, arguably one of the more technically complex of his claims.  Likewise, the Court is acutely aware of the practical reality of the difficulty of obtaining counsel in low dollar value cases.  However, where the Court has accounted for many of the ORS § 20.075(2) factors in determining a reasonable hourly rate, the Court is simply not persuaded that departure from the strong presumptive reasonableness of the lodestar is warranted.

       2.    *Costs*

Plaintiff seeks costs totaling $8,336.95.  That total consists of costs paid by plaintiff in the amount of $434.95; costs paid by Elemental Law LLC in the amount of $2,275.55; and costs paid by Walsh PLLC in the amount of $5,626.45.  OCWEN does not object to the requested costs paid by plaintiff but sets forth objections to certain costs paid by Elemental Law LLC and Walsh PLLC.  The Court addresses each of the requested costs, and OCWEN's objections, in turn.

       a.    Plaintiff

Plaintiff was largely self-represented for part of 2018 through the summer of 2024.[15] Plaintiff reports that during his period of self-representation, he "incurred recoverable case costs totaling $434.95[,]" consisting of (1) $50.00 in service fees to subpoena Sayles; (2) $299.95 in transcript fees; (3) $40.00 in witness fees pertaining to Sayles; and (4) $450.00 in copying costs.  Decl. of Stephen Santoro Supp. Pl. Mot. ("Santoro Decl."), ECF [360], ¶ 4.

OCWEN does not object to the requested costs paid by plaintiff, and the Court finds them to be reasonable.  Plaintiff is entitled to $434.95 in reasonable costs paid by plaintiff.

       b.    Elemental Law LLC

Plaintiff seeks costs paid by Elemental Law LLC in the amount of $2,275.55, consisting of (1) $588.00 in contractor fees relating to the demonstrative exhibit; (2) $1,171.55 in plaintiff's deposition transcript fees; and (3) $516.00 for a copy of the transcript of the pretrial conference held on September 6,

---

[15] During this time, plaintiff received assistance on his appeal to the Ninth Circuit from law students at the University of Washington School of Law.

2024.  OCWEN objects to all three requested costs.

Regarding the $588.00 in contractor fees relating to the demonstrative exhibit, plaintiff argues that these costs were reasonably incurred in preparing for trial.  OCWEN argues that recovery of this cost is not reasonable because the demonstrative video was ruled inadmissible by the Court, largely because it "showed [plaintiff]'s house in a pristine condition shortly before the scheduled trial date in 2024, which was in stark contrast to [its] conditions . . . ten years earlier[.]"  OCWEN Objs. (Costs) 3.  The Court finds that the costs, like the fees, relating to the demonstrative exhibit, are not reasonable.

Regarding the deposition and pretrial conference transcript fees, plaintiff again argues that these costs were reasonably necessary to ready the case for trial.  OCWEN argues that the transcript costs were unnecessary because they were paid for *after* OCWEN had made the offer of judgment that was eventually accepted by plaintiff.  The Court finds that the costs relating to the deposition transcript fees are not reasonable.  As OCWEN points out, these costs were incurred after OCWEN had made an offer of judgment for the full amount of damages that plaintiff could possibly recover at trial.  Though plaintiff had not yet accepted that offer at the time the costs were incurred, there was simply no logical reason for plaintiff to continue to incur these costs after receipt of OCWEN's offer of judgment.

Based on these findings, the Court concludes that plaintiff is not entitled to any costs paid by Elemental Law LLC.

        c.     Walsh PLLC

Plaintiff seeks costs paid for by Walsh PLLC in the amount of $5,626.45, consisting of (1) $758.34 in costs related to the July 6, 2016, deposition of David Strathy-Miller ("Strathy-Miller"); (2) $253.75 for a copy of the Strathy-Miller deposition transcript; (3) $617.10 in costs related to the deposition of Kyle Lucas; (4) $1,507.89 in costs related to the September 20, 2017, deposition of Strathy-Miller; (5) $355.04 in costs related to discovery sought from one of OCWEN's former attorneys, Ryan Farmer ("Farmer"); (6) $1,643.99 in costs related to discovery sought from Freddie Mac; (7) $17.42 in postage costs; (8) $400.00 in filing fees; (9) $25.00 in service costs; and (10) $47.92 in copying costs.  OCWEN objects to the costs related to discovery sought from Freddie Mac and Farmer, as well as to the

postage costs.

Regarding the discovery sought from Freddie Mac and Farmer, OCWEN argues that these costs relate to plaintiff's wrongful foreclosure claim, on which plaintiff did not prevail. Plaintiff asserts the same arguments as to these costs as he asserted as to the fees for unrelated or unsuccessful parties: in summary, that all these costs contributed to the overall case development and that all this work together allowed plaintiff to reach his eventual success. Incorporating its reasoning above as to these issues, the Court finds that the costs relating to discovery sought from Freddie Mac and Farmer are not reasonable and are therefore not recoverable and therefore deducts $1,999.03 for these costs.

Regarding the postage costs, OCWEN argues that "[p]ostage costs are part of overhead that are not recoverable." OCWEN Objs. (Costs) 4. However, OCWEN cites no case law in support of this assertion, and the burden is on OCWEN to overcome FRCP 54(d)'s presumption that these costs are recoverable. Here, the Court finds that the costs relating to postage are reasonable.

OCWEN does not object to the remaining costs paid for by Walsh PLLC, and the Court finds them to be reasonable. Plaintiff is therefore entitled to $3,627.42 in costs paid by Walsh PLLC.[16]

\*        \*        \*

The Court thus awards plaintiff costs totaling $4,062.37, consisting of $434.95 for costs paid by plaintiff and $3,627.42 paid by Walsh PLCC.

**B.    Requests for Judicial Notice**

1.    *First Request for Judicial Notice*

OCWEN's first request for judicial notice is denied as moot. Though OCWEN asserts that the request, which was filed in support of OCWEN's pretrial motions *in limine*, still contains some relevant documents, OCWEN has not adequately explained how or why the consideration of these documents is necessary to resolve plaintiff's petition for fees and costs. At oral argument, OCWEN asserted that the

---

[16] This figure consists of the total amount requested ($5,626.45) minus the costs related to Freddie Mac and Farmer ($1,999.03).

purportedly still-relevant documents show plaintiff's unreasonableness throughout this litigation. The Court disagrees that judicial notice of the requested documents is necessary to adequately analyze the reasonableness of the parties. This request is therefore denied.

     2.    *Second Request for Judicial Notice*

       OCWEN's second request for judicial notice is also denied. OCWEN asserts the documents within the second request are relevant because (1) they show that Hernandez and Walsh were not hired based solely on contingency; (2) they were omitted by plaintiff in his discussion of the contingency factor; and (3) the rates reflected therein are relevant evidence of reasonable market rates in Hernandez and Walsh's community. However, as noted, there is no indication that Hernandez or Walsh were ever paid according to the rates described in the documents—indeed, there is no evidence that either attorney has realized the fruits of any of their labor in this case. Further, as already noted, the Court is not persuaded by OCWEN's geographic arguments. The lodestar analysis does not necessitate that the Court here take judicial notice of the requested documents, and the Court therefore declines to do so.

## CONCLUSION

       For all these reasons, defendant OCWEN Loan Servicing, LLC's ("OCWEN") first request for judicial notice is DENIED as moot; OCWEN's second request for judicial notice is DENIED; and plaintiff's motion for attorneys' fees and costs is GRANTED in part and DENIED in part. Plaintiff is awarded $117,593.87, consisting of $113,531.50 in attorneys' fees and $4,062.37 in costs.

IT IS SO ORDERED.

DATED this 12th day of September, 2025.

Adrienne Nelson
United States District Judge